IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

KIM NOLTE, SHERRY LEWIS, and
THERESA MITCHELL as representatives of a
class of similarly situated persons, and on
behalf of the CIGNA 401(k) plan,

                              Plaintiffs,

v.

CIGNA CORPORATION, JOHN ARKO,
THE CORPORATE BENEFIT PLAN
COMMITTEE OF CIGNA, and CIGNA
HEALTHCARE OF ILLINOIS, INC.,

                              Defendants.

No. 2:07-cv-02046-HAB-DGB

Judge Harold A. Baker

Magistrate Judge David G. Bernthal

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

**I.      PRELIMINARY STATEMENT**

Plaintiffs, Kim Nolte, Sherry Lewis, and Theresa Mitchell, are or were participants in the

CIGNA 401(k) Plan (the "Plan") – a defined contribution individual account plan regulated by

the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ("ERISA").  Plaintiffs

assert that Defendants, CIGNA Corporation (the Plan sponsor), the Corporate Benefit Plan

Committee of CIGNA (the named fiduciary), John Arko (the Plan Administrator), and CIGNA

Healthcare of Illinois, Inc. (the subsidiary for which Plaintiffs worked),[1] owed the Plan certain

fiduciary duties under ERISA which duties they erroneously claim Defendants breached.  To

remedy these alleged fiduciary duty breaches, Plaintiffs have filed a two-count Complaint

---

[1] Although still a party, Plaintiffs have advised Defendants that they intend to dismiss CIGNA
Healthcare of Illinois, Inc. voluntarily.

against Defendants, seeking to recover alleged losses to the Plan under ERISA Sections 502(a)(2) (Count I) and (a)(3) (Count II), 29 U.S.C. §§ 1132(a)(2), (a)(3).

Plaintiffs' allegations center on the manner in which the Plan's service providers were compensated – revenue sharing. Briefly, in a typical revenue sharing arrangement, plan service providers (e.g., recordkeepers and administrators) receive compensation for their services through agreements with fund service providers (e.g., fund managers and investment advisers) who promise to remit a portion of the fees they earn. The revenue stream begins with a fund's asset-based expense ratio, which creates a stream of money netted from participant returns. From this revenue stream, the fund's service providers take the initial cut to cover their costs and expenses, and then the remainder flows to plan services providers to cover their costs.

As a result of these revenue sharing arrangements, ERISA plans frequently are not required to pay anything directly to their administrative service providers, because revenue sharing defrays these costs. According to Plaintiffs, this practice tends to obscure the amount of fees service providers ultimately earn and leads to two abuses, both of which Plaintiffs claim the CIGNA Plan suffered: (1) inadequate information to Plan participants exercising their investment decisions; and (2) overcompensation of Plan service providers. Plaintiffs claim that Defendants breached their fiduciary responsibilities, both in failing to disclose these revenue sharing arrangements and by not policing them to ensure that the fees ultimately earned were reasonable in light of the services rendered. Neither assertion states a claim.

Plaintiffs' claim that Defendants breached their fiduciary duties by failing to disclose revenue sharing arrangements suffers from a fundamental defect: no provision of ERISA requires plan fiduciaries to disclose this information. Currently, ERISA requires plan fiduciaries to disclose only direct costs plans pay to service providers out of plan assets. Tellingly, the

Department of Labor has issued *proposed* regulations to broaden ERISA's disclosure obligations to include indirect forms of compensation, like revenue sharing, because undeniably there is no current disclosure requirement that includes indirect forms of compensation.   Accordingly, Plaintiffs' allegations cannot support a finding that Defendants have violated ERISA in its present incarnation.

Plaintiffs' contention that the fees ultimately borne by Plan participants were excessive fails because Defendants' conduct is not actionable due to the safe harbor provided by ERISA Section 404(c), 29 U.S.C. § 1104(c).  Insofar as they relate to fees, the regulations to Section 404(c) require plan fiduciaries to disclose for each investment alternative only: (a) transaction fees and expenses; and (b) annual operating fees expressed in the aggregate "as a percentage of average net assets" 29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(1)(v) & (2)(i).  Plaintiffs cannot dispute that, through "participant education materials" they admit the Plan provided them, all fees for each of the 22 investment alternatives the Plan offered were disclosed in precisely the manner Section 404(c)'s implementing regulations specify, particularly each fund's expense ratio – the wellhead of the revenue sharing stream.  Although Plaintiffs may not have known how this revenue stream was ultimately divided among fund and plan service providers, they indisputably knew the relative amount of these expenses and could control their costs simply by choosing funds with lower expense ratios.  Thus, the "losses" Plaintiffs claim Defendants inflicted on the Plan in the form of high service fees were, in fact, the product of participant investment choices – precisely the circumstance under which Section 404(c)'s safe harbor operates.

Plaintiffs' remaining Complaint allegations have no legal significance and appear to serve no function other than to color their core allegations.  Plaintiffs assert that Defendants engaged in various forms of fiduciary self-dealing, such as by directing Plan business to CIGNA

subsidiaries and then selling these businesses without allowing the Plan to share in the profits. However, the alleged self-dealing transactions Plaintiffs identify in the Complaint either constitute non-fiduciary settlor activity or constitute transactions specifically authorized by ERISA.

Plaintiffs have, therefore, failed to state a claim under ERISA. Accordingly, the Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    **BACKGROUND FACTS**

In accordance with Rule 12(b)(6), the following facts, including erroneous factual assertions, distilled from Plaintiffs' garrulous 56-page, 164-paragraph Complaint are assumed to be true for purposes of this motion only:

### A.    **The Plan**

The Cigna 401(k) Plan is a "defined contribution plan" within the meaning of ERISA Section 3(34), 29 U.S.C. § 1002(34) (Complaint ¶¶ 4, 49). As Plan participants, Plaintiffs were entitled to contribute up to 25% of their eligible earnings to separate individual investment accounts held by the Plan (Complaint ¶¶ 49, 51). To encourage participation, CIGNA provided participants a 50% matching contribution on participant contributions, up to a maximum of 6% of eligible earnings (Complaint ¶ 52). Plan participants were free to choose among 22 investment options in which to invest their contributions, except that, for many participants, half of CIGNA's matching contributions were initially required to be invested in one specific option – the CIGNA Stock Fund ("Company Stock Fund"), which invested in CIGNA Corporation stock (Complaint ¶¶ 52-53). Participants were not able to transfer such required investments in the Company Stock Fund to other investments before age 55 or termination of employment, which effectively left them out of CIGNA's stock repurchase program, but those restrictions were lifted in March 2005 (Complaint ¶¶ 53, 71-74).

The two largest investment options offered by the Plan – the Fixed Income Fund and the Company Stock Fund – comprised approximately 65% of the Plan's $2.1 billion in assets (Complaint ¶ 51, 57, 67). The Fixed Income Fund – a guaranteed fixed group annuity contract – was the "default" option in which participants' contributions were invested in the absence of participant direction (Complaint ¶ 58, 111).

Prior to April 2004, through a group annuity contract issued by Connecticut General Life Insurance Company, a CIGNA subsidiary ("CGLIC"), Defendants retained CIGNA's "Retirement Business" or "Retirement Segment" to provide investment management, recordkeeping, and other administrative services to the Plan for which CGLIC received fees (Complaint ¶¶ 54-55, 58, 76). The Retirement Business was conducted through several CIGNA subsidiaries and affiliates, including CGLIC and TimesSquare Capital Management, Inc. (a CIGNA investment management subsidiary), and managed total assets worth approximately $18 billion, including the Plan's $2.1 billion (Complaint ¶¶ 54, 67). On April 1, 2004, CIGNA sold its Retirement Business to Prudential Financial, Inc. for an after-tax profit of $809 million (Complaint ¶¶ 58, 66-68). Although not specifically alleged in the Complaint, part of the sale included all shares of CIGNA Life Insurance Company, which was renamed Prudential Retirement Insurance and Annuity Company ("PRIAC"). Following the sale, PRIAC assumed the obligations of CGLIC to provide investment management, recordkeeping and other administrative services to the Plan, for which PRIAC also earned a fee (Complaint ¶¶ 66, 111).

**B.    <u>Service Provider Compensation</u>**

Since at least 1999, the Plan has paid no direct, "hard dollar" fees to any of its administrative service providers, including the Retirement Business and PRIAC (Complaint ¶¶ 85-86). Instead, these service providers are compensated for their recordkeeping, administrative and other services solely through "revenue sharing" arrangements (Complaint ¶¶ 87, 103).

In the typical revenue sharing arrangement, an asset-based expense ratio is established for each fund in the plan's investment portfolio (Complaint ¶¶ 90-91).   The money generated by these expense ratios is netted out of a fund's performance, thereby reducing the returns to plan participants, and enables the fund service providers (e.g., brokers and investment managers) to cover their own costs and make a profit (Complaint ¶¶ 91-92).  The profit in excess of the fund's costs is then "shared" by the fund service providers with administrative service providers, such as recordkeepers, who provide services directly to the plan (Complaint ¶¶ 88, 93).

## C.    The Plan's Periodic Disclosure Of Administrative Costs And Fees

Plan participants, including Plaintiffs, periodically received from the Plan account statements and "participant education materials" (Complaint ¶ 133(A), (E)-(F)).   Among the "participant education materials" Plan participants receive is a document entitled "Investment Choices," which is part of the CIGNA 401(k) Plan Summary Plan Description and Prospectus.[2] Investment Choices includes disclosures of the aggregate amount of each fund's annual operating expenses, expressed as a percentage of average net assets, with respect to 21 of the 22 investment options offered by the Plan.[3]   The exception is the Company Stock Fund, which

---

[2] A copy of Investment Choices dated October 15, 2005 is attached hereto as Exhibit A.  The Court may consider it on this motion to dismiss without converting it into a motion for summary judgment.  Plaintiffs repeatedly refer to "participant education materials" and "communications with Plan participants" in connection with their Complaint allegations about inadequate fee disclosures.  See, e.g., Complaint, ¶¶ 133(E)-(F), 134(D).  These disclosure materials relating to Plan fees are therefore admissible on a motion to dismiss.  See Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002) (district court may consider "documents referred to in the Complaint and central to Plaintiff's claims"); Moss v. Martin, No. 04-3217, 2005 WL 4717594, at *2 (C.D. Ill. May 16, 2005) (a document need not be mentioned by name to qualify as "referred to").

[3] For example, with respect to the Fixed Income Fund, CIGNA disclosed in its October 15, 2005 edition of Investment Choices that "PRIAC is paid annual fees of 0.85% of Fund assets under a *group fixed annuity contract.*  These fees consist of an investment expense and risk charge of 0.50% and an administrative charge of 0.35%."  Investment Choices, p.16 (emphasis in original).

incurs no operating fees that are netted from participants' returns.  Investment Choices, p. 43.[4]

The expense ratios for the various investment alternatives offered by the Plan range from 0.17%

of fund assets for the Dryden S&P 500 Index to 0.96% for the International Blend/The Boston

Company Fund.  Investment Choices, p. 5.

## III.   ARGUMENT

### A.   Applicable Legal Standard

Under Rule 12(b)(6), a court is required to accept the allegations of the complaint as true

and construe them in the light most favorable to the plaintiff.  See County of McHenry v. Ins.

Co. of the West, 438 F.3d 813, 817 (7th Cir. 2006).  However, it is not required to invent legal

arguments for litigants, nor is it required to accept as true legal conclusions or unsupported

conclusions of fact.  See id. at 818.  The complaint must still state the essential elements of a

cause of action simply, concisely, and directly, and a court should dismiss the complaint where it

lacks the necessary legal and factual allegations to establish a claim.  Kirksey v. R.J. Reynolds

Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999).  In addition, "[a] plaintiff who files a long

and detailed complaint may plead himself out of court by including factual allegations which if

true show that his legal rights were not invaded."  Lekas v. Briley, 405 F.3d 602, 613 (7th Cir.

2005) (citation and internal quotes omitted).  Under these standards, the Complaint should be

dismissed for failure to state a claim.

---

[4] With respect to this Fund, CIGNA directly pays the trustee's fees, and there are no investment advisory fees.  The only fees associated with this investment option are transaction fees (e.g. stockbrokers' commissions) generated by participant investment activity, which are charged directly to the participants' individual accounts.  Investment Choices, p. 43.

**B.     Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty Based On Inadequately Disclosed Service Fees.**

**1.     ERISA Requires Only General Disclosures About Plan Fees.**

Two sections of ERISA require a Plan administrator to disclose to participants and beneficiaries information about service fees charged to the Plan:  (1) the annual disclosure provisions of ERISA Section 104(b)(3), 29 U.S.C. § 1024(b)(3); and (2) the request-based disclosure provisions of ERISA Section 104(b)(4), 29 U.S.C. § 1024(b)(4).  Both Sections require only limited, aggregate disclosures about service fees the Plan paid directly to service providers out of plan assets, not detailed disclosures about all compensation arrangements these service providers might have had with the Plan and others, such as revenue sharing arrangements.  Because Plaintiffs make no allegations that Defendants failed to comply with any of their disclosure obligations under ERISA Sections 104(b)(3) and (b)(4), the Complaint should be dismissed.

**a.     The Annual Disclosure Provisions Of Section 104(b)(3)**

ERISA Section 104(b)(3) requires plan administrators to provide participants and beneficiaries, at least annually and without request, a summary of the plan's annual report.  The statute provides, in relevant part:

> Within 210 days after the close of the fiscal year of the plan, the administrator shall furnish to each participant, and to each beneficiary receiving benefits under the plan, a copy of the statements and schedules, for such fiscal year, described in subparagraphs (A) and (B) of Section 1023(b)(3) of this title and such other material . . . as is necessary to fairly summarize the latest annual report.

29 U.S.C. § 1024(b)(3).  The second of the two schedules referred to in ERISA Section 104(b)(3) requires plan administrators to furnish to participants and beneficiaries "a statement of receipts

and disbursements during the preceding twelve-month period *aggregated by general sources and applications*." 29 U.S.C. § 1023(b)(3)(B) (emphasis added).

Department of Labor ("DOL") regulations clarify this limited statutory disclosure obligation.  <u>See</u> 29 C.F.R. § 2520.104b-10.  Insofar as they relate to plan expenses, the DOL's implementing regulations require plan administrators to disclose in the summary annual report the following "Basic Financial Statement" items:

> Benefits under the plan are provided by (indicate funding arrangements).  Plan expenses were ($).  These expenses included ($) in administrative expenses and ($) in benefits paid to participants and beneficiaries, and ($) in other expenses. . . .

29 C.F.R. § 2520.104b-10(d)(3).

Plaintiffs make no allegations in the Complaint that Defendants failed to comply with these limited annual disclosure obligations under ERISA Section 104(b)(3) and the DOL's implementing regulations.  Accordingly, Plaintiffs fail to state a claim for breach of fiduciary duty to the extent they assert that Defendants were under a statutory obligation to disclose, *without request*, broader information about Plan fees and expenses, such as revenue sharing arrangements among Plan service providers.  ERISA's annual disclosure provisions plainly do not require it.

### b. The Obligation To Disclose Documents Upon Request Under ERISA Section 104(b)(4).

Plaintiffs do not allege in the Complaint that they requested, let alone were denied, additional information relating to Plan fees and expenses which went beyond the limited disclosures contained in the summary annual reports required under ERISA Section 104(b)(3).  For this reason alone, their breach of fiduciary duty claims predicated on allegedly inadequate fee and expense disclosures fail to state a claim.  But even if they had requested additional

information, such as revenue sharing arrangements with service providers, Defendants would have been under no obligation to provide it.

ERISA Section 104(b)(4) provides, in relevant part:

> The administrator shall, *upon written request* of any participant or beneficiary, furnish a copy of the latest updated summary[] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated. . . .

28 U.S.C. § 1024(b)(4) (emphasis added).   This disclosure provision obligates a plan administrator to disclose upon request only two categories of documents: (1) the specifically enumerated documents; and (2) "other instruments under which the plan is established or operated."   Neither category requires plan administrators to disclose revenue sharing arrangements.

### (1)   Annual Report (Form 5500)

Of the enumerated documents ERISA requires plan administrators to provide upon request, only the annual report contains information relating to plan fees and expenses.  Like the statutory obligation to disclose fee-related information in the summary annual report, the statutory obligation to disclose fee-related information in the underlying annual reports (29 U.S.C. § 1023(b)(3)(B)) is clarified by DOL regulations.  See 29 C.F.R. § 2520.103-1.  Those regulations provide that ERISA-governed plans, like CIGNA's, with 100 or more participants may satisfy their annual reporting obligations by completing and filing Form 5500 ("Annual Return/Report of Employee Benefit Plan"), and any statements or schedules required to be attached to the Form.  See 29 C.F.R. § 2520.103-1(a)(2) & (b)(1).

Two Schedules to Form 5500 require ERISA plans to report certain aggregate fee and expense information.  Schedule C ("Service Provider Information") requires a plan to identify each of its service providers, describe the nature of that service provider's relationship to the

plan, and report the dollar amounts the plan paid to each for "Gross salaries or allowances" and "Fees and commissions." Form 5500, Schedule C, lines 2(e) & 2(f).[5]  Schedule H ("Financial Information") is even more general and requires ERISA plans to report "total administrative expenses" incurred by the plan, broken down into four broad subcategories: (1) professional fees; (2) contract administrator fees; (3) investment advisory and management fees; and (4) other. Form 5500, Schedule H, lines 2i(1)-(5).[6]

Accordingly, even if Plaintiffs had exercised their rights under ERISA Section 104(b)(4) to request copies of the Plan's annual reports (and they have not alleged that they did), those reports would not have provided them with the comprehensive information about fee arrangements with service providers they claim Defendants unlawfully failed to disclose, because ERISA does not require the Plan to report these arrangements in any form other than as aggregate amounts the Plan directly paid.

### (2) "Other Instruments"

Nor would Defendants have been required to disclose details about fee arrangements among service providers as "other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). "Instruments" under ERISA Section 104(b)(4) refers only to a narrow, specific set of "formal legal documents governing a plan." Ames v. Am. Nat'l Can Co., 170 F.3d 751, 758 (7th Cir. 1999); accord Brown v. Am. Life Holdings, Inc., 190 F.3d 856, 861 (8th Cir. 1999).  The definition does not encompass "all documents that provide information about a

---

[5] Copies of the 2006 Form 5500, Schedules C and H, and the instructions thereto, are attached hereto as group Exhibit B.  These governmental documents are available on the Internal Revenue Service's website at http://www.irs.gov/formspubs/index.html.

[6] The instructions to Form 5500, Schedules C and H, confirm the general nature of these reporting obligations.  See, e.g., 2006 Instructions for Schedule H (Form 5500), Line 2i(1) ("Include the *total* fees paid . . . by the plan for outside accounting, actuarial, legal, and valuation/appraisal services") (emphasis added).

plan and its benefits," <u>Ames</u>, 170 F.3d at 758, or that "simply evidence its operation." <u>Brown</u>, 190 F.3d at 861.  Rather, the definition encompasses only the narrow class of formal documents, similar in nature to those enumerated in the statute, "that plainly set out rights and duties" and "inform individual plan participants and [beneficiaries] as to where they stand with respect to the plan – what benefits [they] may be entitled to, what circumstances may preclude [them] from obtaining benefits, what procedures [they] must follow to obtain benefits, and who are the persons to whom the management and investment of [their] plan funds have been entrusted." <u>DeBartolo v. Blue Cross/Blue Shield of Ill.</u>, No. 01 C 5940, 2001 WL 1403012, at *6 (N.D. Ill. Nov. 9, 2001) (citations and internal quotes omitted); <u>Hess v. Hartford Life & Accident Ins. Co.</u>, 91 F. Supp. 2d 1215, 1226 (C.D. Ill. 2000).

Fee arrangements among plan service providers do not fall within this narrow definition of "instruments." <u>See</u> <u>Mondry v. Am. Family Mut. Ins. Co.</u>, No. 06-C-320-S, 2006 WL 3883601, 39 Employee Benefits Cases 1957, 1964 (W.D. Wis. Nov. 21, 2006).  In <u>Mondry</u>, plaintiff sought to compel her plan to disclose a claims administration agreement between the plan and a service provider.  <u>Id.</u> at 1964.  The agreement specified, among other things: (1) the amount the provider charged the plan for its services; (2) the length of time the agreement was to remain in effect; and (3) the laws that governed its operation.  <u>Id.</u>  The district court concluded that ERISA did not require the plan to disclose the agreement because it did not "define what rights and benefits are available to the Plan's participants and beneficiaries" and thus "does not fall within the Seventh Circuit's narrow reading of Section 1024(b)(4)'s 'other instruments' language."  <u>Id.</u>

Plaintiffs' allegations of inadequate disclosure are functionally indistinguishable from the participant request rejected in <u>Mondry</u>.  The only difference is that the plaintiff in <u>Mondry</u>,

unlike Plaintiffs here, actually requested the information Plaintiffs accuse Defendants of failing to provide without request.   The result, however, is the same.   Because the fee-related information that forms the basis of Plaintiffs' breach of fiduciary duty claims is not subject to disclosure under any ERISA provision or implementing regulation, upon request or otherwise, Plaintiffs' claims of inadequate disclosure fail as a matter of law and the Complaint should be dismissed for failure to state a claim.

### 2. Recent Regulatory Activity Confirms That ERISA Does Not Currently Require Detailed Disclosures About Plan Fees.

If there were any doubts about the highly circumscribed nature of the Plan administrator's obligations under ERISA to disclose fee-related information to participants and beneficiaries, and there aren't, these doubts are resolved by recent regulatory activity to amend ERISA's disclosure provisions to require plan administrators to provide additional information about plan service fees.

Last summer, the DOL issued a proposed rule which amends, among other regulations, 29 C.F.R. § 2520.103-1 and suggests revisions to Form 5500 and its instructions "to provide more information . . . regarding plan fees and expenses."  71 Fed. Reg. 41,392, 41,394 (Jul. 21, 2006).  Insofar as is relevant to this case, the proposed rule would:

> revise the Schedule C and accompanying instructions to clarify the requirements regarding reporting of direct and indirect compensation . . . received during the plan year in connection with services rendered to the plan or the person's position with the plan. Also, a *new section* would be added requiring that the source and nature of compensation in excess of $1,000 received from parties other than the plan or the plan sponsor be disclosed for certain key service providers, including, among others, investment managers, consultants, brokers, and trustees, as well as other fiduciaries.

77 Fed. Reg. at 41,934 (emphasis added).

The proposed rule was prompted by recommendations from the ERISA Advisory Council Working Groups and the Government Accountability Office ("GAO"), both of which concluded that ERISA's current fee disclosure requirements are insufficient to capture the full cost of plan operation. See 71 Fed. Reg. at 41,934. The Working Groups, in particular, observed that: (1) "many plan sponsors have moved to 'bundled' arrangements with plan providers whereby other costs of administration such as record keeping or trustee fees are offset, in whole or in part, by revenue sharing arrangements;" (2) "many explicit fees have all but disappeared;" (3) "as a result of this evolution in how fees are collected, the Form 5500 as currently structured is outdated and simply no longer reflects the way fee structures work in the industry;" and (4) "the current Form 5500 does not provide plan sponsors, participants, or governmental regulators adequate information to understand the true cost of the plan." ERISA Advisory Counsel Working Group on Plan Fees and Reporting on Form 5500, at 5 (Nov. 10, 2004) (available at http://www.dol.gov/ebsa/publications). These observations and the push for future regulatory action they helped precipitate, however, lead to one unavoidable conclusion: ERISA's *current* disclosure scheme does not now require plan fiduciaries to provide participants and beneficiaries with the kind of comprehensive information about service fees, such as revenue sharing arrangements, upon which Plaintiffs' breach of fiduciary duty claims are predicated. Thus, the Complaint should be dismissed. See Eustace v. Commissioner, 312 F.3d 905, 908 (7th Cir. 2002) ("proposed regulations have no legal effect").[7]

---

[7] Evidently, the DOL's proposed rule issued last summer gained no traction and the DOL appears to be starting from scratch. On April 25, 2007, the DOL issued a request for information ("RFI") seeking public commentary on "the disclosure of plan administrative and investment-related fee and expense information to participants and beneficiaries in participant-directed individual account plans (e.g., 401(k)) plans." 72 Fed. Reg. 20,457, 20,457 (Apr. 25, 2007). Last summer's proposed rule was not mentioned in the RFI.

### 3. ERISA's General Fiduciary Duty Provisions Do Not Expand Its Specific Disclosure Obligations.

Even though ERISA and the DOL's implementing regulations do not expressly require plan administrators to disclose revenue sharing arrangements and other indirect costs of plan operation, Plaintiffs appear to suggest that the Court should nevertheless infer such an obligation from ERISA's general fiduciary duty requirements.  See 29 U.S.C. § 1104(a)(1)(A) (obligating fiduciaries to act for the exclusive benefit of participants and beneficiaries with respect defraying reasonable costs of plan administration).  The Supreme Court and several Courts of Appeals, however, have overwhelmingly rejected this identical argument.

In Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73 (1995), the Supreme Court observed that ERISA's reporting and disclosure scheme, which includes Section 104(b), "may not be a foolproof informational scheme, although it is quite thorough.  Either way, it is the scheme that Congress devised.  And we do not think Congress intended it to be supplemented by a far-away provision in another part of [ERISA.]"  Id. at 84.  Since Curtiss-Wright, Courts of Appeals have rejected efforts to expand ERISA's specific disclosure provisions under Section 104(b) by resort to the general fiduciary obligations under ERISA Section 404(a), which say nothing about disclosure.  See, e.g., Faircloth v. Lundy Packing Co., 91 F.3d 648, 657 (4th Cir. 1996) ("We likewise decline to use § 404(a)(1)(A) to expand the duties imposed under § 104(b)(4), the ERISA section that specifically governs the situation here – a request for documents related to the ESOP"); accord Bd. of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 146-47 (2d Cir. 1997) ("[W]e think it inappropriate to infer an unlimited disclosure obligation on the basis of general provisions that say nothing about disclosure").  Thus, ERISA's specific disclosure provisions govern and are not subject to further judicial expansion under Section 404(a).

In sum, the statute, the implementing regulations, and recent regulatory activity all confirm that ERISA currently requires plan fiduciaries to disclose only limited information about plan fees and expenses.  These limited disclosure obligations extend to fees the plan pays directly to service providers out of plan assets, not to all forms of compensation plan service providers receive, such as revenue sharing.  Although a broader obligation to disclose fees and expenses has been proposed, it is not now the law, and has no legal effect.  See Eustace, 312 F.3d at 908.  Accordingly, Plaintiffs' Complaint, which does not allege that Defendants breached any of their disclosure obligations under ERISA in its present incarnation, should be dismissed for failure to state a claim.

## C.    Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty Based On Excessive Service Fees.

Plaintiffs' Complaint allegations also relate to the amount of service fees (as opposed to the obligation to disclose them) the Plan pays service providers indirectly through revenue sharing arrangements.  Plaintiffs claim that Plan fees are excessive in light of the services rendered and seek to hold Defendants responsible for allowing the Plan to incur them.  Plaintiffs' argument is without merit.  The Plan is a participant-directed plan, a fact Plaintiffs readily concede.  Because the fees associated with each investment option offered by the Plan are fully disclosed in accordance with ERISA and DOL regulations, the fees incurred by the Plan are the product of Plaintiffs' and other participants' fully-informed discretionary investment decisions.  Therefore, Defendants cannot be liable for any breach of fiduciary duty because of the safe harbor provided by ERISA Section 404(c).

1.    **Although Section 404(c)'s Safe Harbor Is An Affirmative Defense, It Appears In Plaintiffs' Complaint And May Be Tested At The Pleading Stage.**

ERISA Section 404(c) provides that "no fiduciary shall be liable for any loss which results from a plan participant or beneficiary's exercise of control in participant-directed plans." Jenkins v. Yager, 444 F.3d 916, 923 (7th Cir. 2006).   Specifically, the statute provides, in relevant part:

> In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary) –
>
> * * *
>
> (B)  no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control.

29 U.S.C. § 1104(c)(1)(B).

Section 404(c) is an affirmative defense.  See, e.g., In re Unisys Sav. Plan Litig., 74 F.3d 420, 446 (3d Cir. 1996) ("[S]ection 1104(c) is akin to an exemption from or a defense to ERISA's general rule, relieving fiduciaries in the appropriate circumstances of the liability to which they would otherwise be exposed. . . .").  As an affirmative defense, it is ordinarily not suitable for resolution at the pleading stage because complaints are not required to anticipate affirmative defenses to survive a motion to dismiss.  See United States v. Lewis, 411 F.3d 838, 842 (7th Cir. 2005).  However, "[i]f the attempt to avoid the affirmative defense actually demonstrates the defense's effectiveness, a situation similar to that of a complaint that contains a built-in defense is presented.  As a result, the defendant may test the validity of the defense, since it appears on the face of the complaint, by a motion to dismiss or for summary judgment."  5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1276 (2d ed. 1987);

see <u>Lewis</u>, 411 F.3d at 842 ("The exception occurs where, as here, the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense").

Plaintiffs devote a substantial portion of their Complaint to legal arguments that Section 404(c)'s safe harbor does not immunize Defendants against Plaintiffs' claims of excessive Plan fees and expenses (Complaint ¶¶ 42-48, 117-32).  Accordingly, this affirmative defense may now be tested by a motion to dismiss.

### 2. Plaintiffs Exercise "Control" Over Their Investment Decisions Within The Meaning Of The DOL Regulations.

A plan must meet several criteria to qualify as an "ERISA Section 404(c) Plan."  <u>See</u> 29 C.F.R. § 2550.404c-1.  Plaintiffs do not assert that the Plan fails to satisfy any of the regulatory criteria, with one exception.  According to Plaintiffs, Section 404(c) Plans must allow participants and beneficiaries to exercise control over their investments (<u>e.g.</u>, Complaint ¶ 44), control is a function of adequate information (<u>e.g.</u>, Complaint ¶¶ 45-46), and the "participant education materials" the Plan provides to participants were insufficient to allow them to evaluate Plan fees and expenses, thereby effectively vitiating their investment control (<u>e.g.</u>, Complaint ¶¶ 121-22, 133-37).  Plaintiffs then assert that, because participants and beneficiaries do not control their investments, Defendants have no defense under Section 404(c) against their claims that Plan fees and expenses were excessive (<u>e.g.</u>, Complaint ¶¶ 123-24).  Plaintiffs' argument is without merit.

### a. Plan Disclosures About Investment Fees And Expenses Satisfy The DOL's Regulatory Criteria.

In addition to the general fee disclosures imposed on all ERISA plans under Sections 104(b)(3) and (b)(4) discussed above, DOL regulations impose additional fee disclosure requirements on Section 404(c) Plans.  In order to satisfy the regulatory "control" criteria, 29 C.F.R. § 2550.404c-1(b)(2)(i)(B) requires an ERISA Section 404(c) Plan affirmatively to

disclose to plan participants and beneficiaries, among other things, the following investment-specific fee and expense information:

> (1)(v)  A description of any *transaction fees and expenses* which affect the participant's or beneficiary's account balance in connection with purchases or sales of interests in investment alternatives (e.g., commissions, sales load, deferred sales charges, redemption or exchange fees); [and] . . .
>
> (2)(i)  A description of the *annual operating expenses* of each designated investment alternative (e.g., investment management fees, administrative fees, transaction costs) which reduce the rate of return to participants and beneficiaries, and the aggregate amount of such expenses expressed as a percentage of average net assets of the designated investment alternative.

29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(1)(v) & (2)(i) (emphasis added).

Plaintiffs do not assert that the Plan failed to provide any of the fee-related information specified in Section 2550.404c-1(b)(2)(i)(B).  Nor can they.  The Investment Choices document CIGNA distributes among its "participant education materials" indisputably contains all of the fee-related information ERISA currently requires plan administrators to disclose with respect to the 22 investment funds the Plan offers.  With respect to transaction fees and expenses that must be disclosed under Section 2550.404c-1(b)(2)(i)(B)(1)(v), only one of the 22 funds is subject to such fees – the CIGNA Stock Fund.  Those fees are disclosed.  See Investment Choices, p. 43 (describing the amount and circumstances under which stockbrokers' commissions are incurred).  With respect to the remaining 21 Plan funds, the aggregate amount of each fund's annual operating expenses, expressed as a percentage of average net assets, is also disclosed in accordance with  29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(2)(i).  See, e.g., supra n. 3.

Because Defendants met their investment-specific fee disclosure obligations in exactly the manner Section 2550.404c-1(b)(2)(i)(B) specifies, Plaintiffs' assertions that these disclosures were inadequate to qualify Defendants for Section 404(c)'s fiduciary immunity should be

rejected.  They merely rehash their argument that ERISA's specific disclosure obligations do not go far enough to capture the full cost of plan operation and should be judicially expanded by resort to ERISA Section 404(a)'s general fiduciary obligations.

> **b.  Because The Regulatory Disclosure Criteria Are Satisfied, Defendants Cannot Be Liable For Breach Of Fiduciary Duty Based On Excessive Fees.**

Because Defendants indisputably met the investment-specific disclosure requirements ERISA now imposes, Plaintiffs' assertion that Plan fees and expenses were excessive and that Defendants breached their fiduciary duty by allowing the Plan to incur them fails as a matter of law.  Even if Defendants had breached their fiduciary duty in selecting certain funds that carried high fees in light of the services rendered (which Defendants dispute), Section 404(c) "allows a fiduciary, *who is shown to have committed a breach of fiduciary duty in making an investment decision*, to argue that, despite the breach, it may not be held liable because the alleged loss resulted from a participant's exercise of control."  Unisys, 74 F.3d at 445 (emphasis added); accord Langbecker v. Elec. Data Sys., 476 F.3d 299, 312 (5th Cir. 2007).

Moreover, as the Fifth Circuit recently observed, although "[a] plan fiduciary may have violated the duties of selection and monitoring of a plan investment, . . . § 404(c) recognizes that participants are not helpless victims of every error."  Langbecker, 476 F.3d at 312.  That observation applies with full force here.  The Plan offered participants 22 investment alternatives, with fees (which were fully disclosed in an easily-compared format) ranging from 0.17% to 0.96% of fund assets.  See Investment Choices, p. 5.  If participants believed that a particular investment alternative carried excessive fees, they could have freely chosen another alternative.  Accordingly, the participants themselves determined the amount of fees charged to the Plan through their own investment decisions.  As a result, no cause of action can be manufactured against the Defendants.

D.      **Plaintiffs' Fail To State A Claim Of Fiduciary Self-Dealing.**

Scattered throughout Plaintiffs' Complaint are allegations that Defendants engaged in various transactions which they characterize as fiduciary "self-dealing" in violation of ERISA (e.g., Complaint ¶¶ 9, 22, 54-74).  Plaintiffs, however, fail to identify a single transaction that properly qualifies as self-dealing.  Therefore, these inflammatory allegations should be dismissed as a matter of law.

Plaintiffs mention several times in the Complaint that CIGNA sold its Retirement Business to PRIAC in April 2004 for an $809 million profit and assert that Defendants breached their fiduciary duty to the Plan because Plan participants did not adequately share in the sale proceeds (Complaint ¶¶ 66-71).  Plaintiffs fail to state a claim for breach of fiduciary duty under ERISA.  A sale of a business is strictly a corporate function, not an ERISA-regulated fiduciary act.  See Ames v. Am. Nat'l Can Co., 170 F.3d 751, 757 (7th Cir. 1999) ("[W]hen company representatives are negotiating the sale of a division, they are not acting in their capacity as a plan fiduciary, and thus they do no bear the legal obligations that go along with fiduciary status"); Coleman v. General Electric Co., 643 F. Supp. 1229, 1238-39 (E.D. Tenn. 1986) ("[T]he fact that an employer serves in a dual capacity as both employer and fiduciary does not prevent an employer from engaging in normal business activity, such as the sale of a division"), aff'd, 822 F.2d 59 (6th Cir. 1987).[8]

---

[8] In the Complaint, Plaintiffs also appear to suggest that Defendants breached their fiduciary duty because CIGNA did not include the Plan, as a stockholder through ownership of the Company Stock Fund, in CIGNA's annual stock repurchase program (Complaint ¶¶ 71-73).  Plaintiffs, however, have not alleged, nor can they allege, that CIGNA's stock repurchase program was an ERISA-regulated plan.  Therefore, ERISA's fiduciary duties are not triggered.  See Husvar v. Rapoport, 430 F.3d 777, 782 (6th Cir. 2005) ("A claim that company directors did not operate the business itself in conformity with sound business practices does not, however, implicate the protections afforded by ERISA"); Hickman v. Tosco, 840 F.2d 564, 566 (8th Cir. 1988) ("ERISA does not prohibit an employer from acting in accordance with his interests as an employer when not administering the plan or investing the assets").

Plaintiffs next accuse Defendants of fiduciary wrongdoing because approximately 65% of

Plan assets were allegedly invested in two CIGNA-related investment vehicles:  the CIGNA

Company Stock Fund and the Fixed Income Fund, the latter a "fixed group annuity contract with

[C]GLIC" prior to April 2004 (Complaint ¶¶ 58-60).  Plaintiffs allege that the risks attendant to

these investments "subjected the Plan and its participants to the unreasonable and imprudent

dangers of undiversified investing" (Complaint ¶ 61).  Aside from the fact that the Plan offered

22 investment options, and participants were free to structure their investment portfolios

however they wished, Plaintiffs have failed to allege actual losses stemming from Defendants'

alleged failure to diversify Plan assets.  Thus, Plaintiffs' allegations are nothing more than

*un*realized fears of future loss and are not actionable.  See Jenkins v. Yager, 444 F.3d 916, 924

(7th Cir. 2006) (to state a claim for breach, plaintiff must establish "that the breach caused harm

to the plaintiff").  This is particularly true where, as here, the investments about which Plaintiffs

complain – company stock and insurance company group annuity contracts – are expressly

authorized by ERISA.  See, e.g., 29 U.S.C. § 1104(a)(2) (exempting qualifying employer

securities from the prudence and diversification requirements); 29 U.S.C. § 1108(b)(5)

(exempting contracts for "life insurance, health insurance, or annuities" from prohibited

transaction provisions).

Finally, Plaintiffs allege that Defendants engaged in fiduciary *self*-dealing when it

directed certain Plan-related functions, such as investment management and recordkeeping, to

CIGNA's "Retirement Business" prior to its sale to PRIAC in April 2004 (Complaint ¶¶ 54-57).

However, as Plaintiffs themselves recognize, CIGNA's "Retirement Business" was comprised of

entities separate from Defendants.  Indeed, Plaintiffs name two of these entities specifically –

CGLIC and Times Square Capital Management – and refer to them as CIGNA *subsidiaries*

(Complaint, ¶¶ 54-55).  Under ERISA, although transactions between a parent and a subsidiary are properly described as transactions between parties-in-interest, see Section 3(14)(G), 29 U.S.C. § 1002(14)(G) (50% ownership establishes party-in-interest relationship), such transactions are not examples of fiduciary *self*-dealing because the entities are legally separate. See M&R Inv. Co. v. Fitzsimmons, 685 F.2d 283, 285 (9th Cir. 1982) (subsidiaries of common parent that sponsored fund considered parties in interest).  As a result, even though Defendants allegedly directed Plan business to entities that were CIGNA-owned prior to April 2004, there was nothing inappropriate about it.  See 29 U.S.C. § 1108(b)(2).  Therefore, CIGNA's subsidiary "Retirement Business" was no different from any other service provider or vendor insofar as ERISA's prohibited transactions restrictions are concerned and Plaintiffs' repeated insinuations to the contrary (e.g., Complaint ¶ 64) are without merit.  Accordingly, Plaintiffs' inflammatory self-dealing allegations under ERISA should be dismissed in their entirety pursuant to Rule 12(b)(6) for failure to state a claim.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Defendants, CIGNA Corporation, John Arko, The Corporate Benefit Plan Committee Of CIGNA, and CIGNA Healthcare Of Illinois, Inc., respectfully request the Court to dismiss the Complaint with prejudice.

Respectfully submitted,

CIGNA CORPORATION, JOHN ARKO, THE CORPORATE BENEFIT PLAN COMMITTEE OF CIGNA, and CIGNA HEALTHCARE OF ILLINOIS, INC.


By:   s/ James E. Bayles, Jr.

Sari M. Alamuddin (ARDC # 06215689)
James E. Bayles, Jr. (ARDC # 06206547)
Attorneys for Defendants
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois  60601
Telephone: (312) 324-1000
Fax:  (312) 324-1001
E-mail:  salamuddin@morganlewis.com
             jbayles@morganlewis.com


Joseph J. Costello (*admission pending*)
Attorney for Defendant
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103
Telephone: (215) 963-5000
Fax:  (215) 963-5001
E-mail:  jcostello@morganlewis.com

## CERTIFICATE OF COMPLIANCE

In accordance with CDIL-LR 7.1(B)(4)(c), I hereby certify that the foregoing Defendants' Memorandum Of Law In Support Of Their Motion To Dismiss complies with the type-volume limitation of Rule 7.1(B)(4)(b)(1). The Memorandum contains 6,756 words and was prepared in a proportionally spaced typeface (12-point Times New Roman) using Microsoft Word 2003.

s/ James E. Bayles, Jr.

Sari M. Alamuddin (ARDC # 06215689)
James E. Bayles, Jr. (ARDC # 06206547)
Attorneys for Defendants
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois  60601
Telephone: (312) 324-1000
Fax:  (312) 324-1001
E-mail:   salamuddin@morganlewis.com
               jbayles@morganlewis.com

Joseph J. Costello (*admission pending*)
Attorney for Defendant
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103
Telephone: (215) 963-5000
Fax:  (215) 963-5001
E-mail:   jcostello@morganlewis.com

## INDEX OF EXHIBITS TO DEFENDANTS'
## MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS

| Exhibit | Title |
| --- | --- |
| A | CIGNA 401(k) Plan Summary Plan Description and Prospectus, Investment Choices – October 15, 2005 |
| B | 2006 Form 5500, Schedules C and H, including instructions |

## CERTIFICATE OF SERVICE

I hereby certify that, on April 25, 2007, I electronically filed the foregoing Defendants'

Memorandum Of Law In Support Of Their Motion To Dismiss with the Clerk of the Court using

the CM/ECF system which will send notification of such filing to the following:

> Jerome J. Schlichter
> Daniel V. Conlisk
> Heather Lea
> SCHLICHTER, BOGARD & DENTON
> 100 South 4th Street, Suite 900
> St. Louis, Missouri  63102
> jschlichter@uselaws.com
> dconlisk@uselaws.com
> hlea@uselaws.com


> s/ James E. Bayles, Jr.
>
> Sari M. Alamuddin (ARDC # 06215689)
> James E. Bayles, Jr. (ARDC # 06206547)
> Attorneys for Defendants
> MORGAN, LEWIS & BOCKIUS LLP
> 77 West Wacker Drive, Fifth Floor
> Chicago, Illinois  60601
> Telephone: (312) 324-1000
> Fax:  (312) 324-1001
> E-mail:   salamuddin@morganlewis.com
>         jbayles@morganlewis.com
>
> Joseph J. Costello (*admission pending*)
> Attorney for Defendant
> MORGAN, LEWIS & BOCKIUS LLP
> 1701 Market Street
> Philadelphia, Pennsylvania  19103
> Telephone: (215) 963-5000
> Fax:  (215) 963-5001
> E-mail:   jcostello@morganlewis.com