**E-FILED**
Friday, 19 October, 2007  12:12:28 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

|  |  |
|---|---|
| KIM NOLTE, SHERRY LEWIS, and THERESA MITCHELL as representatives of a class of similarly situated persons, and on behalf of the CIGNA 401(k) plan, <br><br>         Plaintiffs, <br><br> v. <br><br> CIGNA CORPORATION, JOHN ARKO, and THE CORPORATE BENEFIT PLAN COMMITTEE OF CIGNA, <br><br>         Defendants. | No. 2:07-cv-02046-HAB-DGB <br><br> Judge Harold A. Baker <br><br> Magistrate Judge David G. Bernthal |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

Sari M. Alamuddin (ARDC # 06215689)
James E. Bayles, Jr. (ARDC # 06206547)
Attorneys for Defendants
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois  60601
Telephone: (312) 324-1000
Fax:  (312) 324-1001
E-mail:   salamuddin@morganlewis.com
     jbayles@morganlewis.com

Joseph J. Costello (admitted *pro hac vice*)
Attorney for Defendants
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103
Telephone: (215) 963-5000
Fax:  (215) 963-5001
E-mail:   jcostello@morganlewis.com

## I.      **INTRODUCTION**

On July 19, 2007, Plaintiffs filed a two-count Amended Complaint alleging that Defendants breached their fiduciary duties to the Plan in violation of Sections 502(a)(2) and (a)(3) of the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Although corpulent (32 pages in total), the Amended Complaint asserts only three basic fiduciary duty breach claims, which Plaintiffs restate in various ways to create the illusion of substance: (1) Defendants violated the prohibited transactions provisions of ERISA Section 406 by, prior to April 2004, retaining CIGNA affiliates to serve as the Plan's primary investment manager and service provider; (2) Defendants selected Plan investment options that allegedly carried "excessive" fees; and (3) Defendants sold the businesses that previously administered the Plans for a profit without sharing the proceeds with the Plan (Am. Compl. ¶ 2).

On September 10, 2007, Defendants filed a motion for summary judgment  (Docket #19) in response to Plaintiffs' Amended Complaint.  The motion included a 95-paragraph statement of undisputed material facts citing to a battery of governing Plan documents dating back to 2002 which collectively show that the Plan satisfied all of the requirements of a Section 404(c) Plan under the Department of Labor's ("DOL's") implementing regulations, both prior and subsequent to the April 2004 sale.  *See* 29 C.F.R. § 2550.404c-1.  Defendants asserted that the Plan's Section 404(c) status shifted investment responsibility to participants, including responsibility for losses resulting from investment in allegedly expensive Plan options, thereby eliminating Plaintiffs' excessive fee claims as a matter of law.  Defendants also asserted that the remainder of Plaintiffs' claims failed to state a claim for breach of fiduciary duty under ERISA's prohibited transactions provisions because ERISA allows financial services companies to use their own services to administer the Plans they sponsor and corporate transactions, such as divestitures, are outside of ERISA's governance.

Plaintiffs' first response to the Motion was to ask the Court to excuse them from responding to it at all (Docket #23).  The Court summarily denied the request and ordered Plaintiffs to file "a comprehensive response" by October 8, 2007 (9/26/07 Text Order).  It also reminded Plaintiffs of their responsibilities under Rule 56(f) to show that "[i]f discovery is needed, the response should specify the nature of the discovery sought and the people to be deposed or affidavits to be obtained (specifying the relevance of the information sought in regard to the motion for summary judgment)" (9/26/07 Text Order).  Plaintiffs' subsequent "Response" to Defendants' Motion for Summary Judgment filed on October 5 (Docket #27) ignores the Court's order almost entirely.  Far from filing a "comprehensive response," Plaintiffs respond directly to only a handful of Defendants' statements of material fact, and most of those responses simply point to the complaint allegations and assert that that ought to be good enough.  Plaintiffs ignore entirely more than two-thirds of the remaining fact statements, claiming that they need discovery to respond, without "specifying the people to be deposed or affidavits to be obtained." That is hardly a response, given that these statements of fact merely navigate the governing Plan documents to show compliance with Section 404(c)'s implementing regulations.  Plaintiffs could answer by reading, but have refused to do so because they simply do not like what these documents say about their case.

Plaintiffs' legal arguments are largely non-responsive as well.  Plaintiffs reiterate their complaint allegations that the retention of certain CIGNA affiliates to administer the Plan and then the subsequent sale of these businesses ought to be prohibited, without citing a single judicial authority to show that it *is* prohibited.  And, Plaintiffs ignore entirely Defendants' argument that Section 404(c) is clear on its face and that the DOL's implementing regulations cannot be creatively construed to alter it in such a way as to create a special exception to Section

404(c)'s fiduciary immunity for their excessive fee claims.  Plaintiffs simply try in their Response to creatively manipulate another part of the regulations to achieve the result they want. Thus, Plaintiffs have not responded to Defendants' summary judgment motion, despite the Court's order to do so.  Therefore, the Motion should be granted.

## II.  REPLY TO ADDITIONAL MATERIAL FACTS

### A.  Material And Undisputed Facts

In accordance with CDIL-LR 7.1(D)(3)(a)(1), Defendants state that the following facts contained in Plaintiffs' Additional Material Facts are conceded to be material and undisputed:

6.  **Allegation:**  The Plan included actively-managed funds. Am. Comp., ¶ 65.

**Record Evidence:**  All of the Plan's equity funds were actively-managed, with the exception of three passively-managed index funds (Defs.' Facts ¶ 90, citing 10/15/05 IC pp. 28-29, 37-38, 41-42; 12/31/06 SPD Update p. 10).

### B.  Material But Disputed Facts

In accordance with CDIL-LR 7.1(D)(3)(a)(2), Defendants state that the following facts contained in Plaintiffs' Additional Material Facts are material but disputed:

1.  **Allegation:**  CIGNA Corporation was the primary investment manager and service provider for the Plan prior to April 2004. Am. Comp., ¶ 10, 31-32, 35-45.

**Contrary Record Evidence:**  As the Summary Plan Description ("SPD") and the version of Investment Choices ("IC") in force prior to April 2004 make clear, the Connecticut General Life Insurance Company, a CIGNA affiliate ("CG Life"), provided administrative and account record keeping services to the Plan and served as the "investment manager" of the separate accounts constituting the Plan's investment options (*See* Defs.' Facts ¶ 35, citing 9/23/02 IC p. 49; *see also* SPD p. 56 (CG Life "issues the annuity contract under which Plan

1-CH/201354.3

funds are accumulated and managed.  It provides administrative and account record keeping services under the annuity contract")).

8.    **Allegation:**  Defendants failed to disclose to Plan participants that their individual accounts were being charged for, and/or were being negatively impacted by, the payment of fees and expenses. Am. Comp., ¶¶ 2, 49, 69-74.

**Contrary Record Evidence:**   Plan documents provided all fee-related information required under ERISA for Section 404(c) Plans (*see* Defs.' Facts ¶ 60, citing 10/15/05 IC p. 44 (commissions relating to transactions in the CIGNA Stock Fund); Defs.' Facts ¶¶ 73, 75 citing 10/15/05 IC pp. 5, 14-46 and 12/31/06 SPD Update pp. 10, 15-16 (descriptions of the annual operating expenses of each investment fund which reduce the rate of return to participants and beneficiaries, expressed in the aggregate as a percentage of average net assets)). In addition, Investment Choices advises participants that the investment results reported for each fund "are net of the funds' applicable fees" which are "described in the Fees and Charges sections for each fund. . . ." (10/15/05 IC p. 10; 9/23/02 IC p. 10).  Plaintiffs' response to Defendants' Statement of Fact # 5 acknowledges that Investment Choices advises participants that fees and expenses "are paid out of Plan assets in participants' accounts" (Response p. v. ¶ 5, citing 10/15/05 IC p. 48).

C.    **Immaterial Facts**

In accordance with CDIL-LR 7.1(D)(3)(a)(2), Defendants state that the following facts contained in Plaintiffs' Additional Material Facts are immaterial:

2.    **Allegation:**  CIGNA Corporation used its position as primary investment manager and service provider for the Plan to profit at the expense of Plan participants. Am. Comp., ¶ 10, 31-32, 35-45.

-4-

**Reason Immaterial:**   That CIGNA may have, prior to April 2004, indirectly generated revenue from the provision of services to the Plan through a subsidiary company is immaterial.   ERISA contemplates that financial services companies will use their own services to administer the plans they sponsor.   *See* Defs.' MSJ p. 43.

**Contrary Record Evidence:**   Plaintiffs' allegations about Plan management are factually incorrect.   CG Life, a CIGNA affiliate, was the Plan's primary investment manager and service provider prior to April 2004 (Defs.' Facts ¶ 35, citing 9/23/02 IC p.49; *see also* SPD p. 56 (CG Life "issues the annuity contract under which Plan funds are accumulated and managed. It provides administrative and account record keeping services under the annuity contract")). Prudential Retirement Insurance and Annuity Company ("PRIAC") now provides these services to the Plan (Defs.' Facts ¶¶ 27-28, citing 10/15/05 IC p. 48).

3.      **Allegation:**   Defendants used their fiduciary positions to retain, for their own profit, CIGNA affiliates as investment managers and service providers for the CIGNA 401(k) Plan ("Plan"). Am. Comp., ¶¶ 2, 18.B.i, 21, 31-32, 35-45.

**Reason Immaterial:**   That CIGNA may have, prior to April 2004, indirectly generated revenue from the provision of services to the Plan through a subsidiary company is immaterial.   ERISA contemplates that financial services companies will use their own services to administer the Plans they sponsor.   *See* Defs.' MSJ pp. 42-43.

**Contrary Record Evidence:**   Most Plan service providers were not CIGNA affiliates.   Prior to April 2004, CIGNA retained an affiliate – CG Life – to provide *Plan*-level administrative and account record keeping services and CG Life served as the "investment manager" of the Plan's separate accounts (Defs.' Facts ¶ 35, citing 9/23/02 IC p. 49).   After April 2004, these services were provided by PRIAC (Defs.' Facts ¶¶ 27-28, citing 10/15/05 IC p. 48).

-5-

Prior to April 2004, CIGNA retained an affiliate – TimesSquare Capital Management, Inc. ("TimesSquare") – to provide *fund*-level management services for only three of the Plan's 22 investment funds: the Fixed Income Fund, the S&P 500 Index Fund and the Small Cap Growth/TimesSquare Fund (Defs.' Facts ¶ 31, citing Am. Compl. ¶ 31 and 9/23/02 IC pp. 18, 31, 37).  None of the fund managers is currently affiliated with CIGNA (Defs.' Facts ¶ 32, citing 10/15/05 IC pp. 14-46; 12/31/06 Update pp. 15-16).

4.     **Allegation:**  Defendants used Plan assets to make other CIGNA entities profitable so that those entities could be sold at a price which benefited CIGNA Corporation and, ultimately, all Defendants. Am. Comp., ¶¶ 2, 18.B.iii, 21, 31-32, 35-45.

**Reason Immaterial:**  That CIGNA may have, prior to April 2004, indirectly generated revenue from the provision of services to the Plan through subsidiary companies is immaterial.  ERISA contemplates that financial services companies will use their own services to administer the Plans they sponsor.  *See* Defs.' MSJ p. 43.  Moreover, corporate transactions, such as divestitures, are not ERISA-regulated fiduciary acts.  *See* Defs.' MSJ p. 40.

5.     **Allegation:**  Defendants chose improper and imprudent investment options for the Plan. Am. Comp., ¶¶ 2, 18.B.ii-v, 65-68.

**Reason Immaterial:**  Whether the Plan's investment options were "improper and imprudent" is a conclusion of law, not a statement of fact.  Moreover, Plaintiffs have not alleged in the Amended Complaint that any of the Plan's investment options were imprudent in any respect other than in the fees they charge.  The prudence of a particular Plan investment option is immaterial to Defendants' motion because ERISA Section 404(c) assumes fiduciary imprudence at the outset and operates to excuse that imprudence where losses could not occur without a subsequent participant decision to invest.  *See* Defs.' MSJ pp. 23-24, 34-36.

**Contrary Record Evidence:**   The Plan document states that the Corporate Benefit Plan Committee of CIGNA selects Plan investment options (Defs.' Facts ¶ 16, citing Am. Compl. ¶ 8; 401(k) Plan §§ 7.1(b), 16.2).

7.    **Allegation**:  Including actively-managed funds as an investment option in plans the size of the CIGNA 401(k) Plan is imprudent because they add no value and subject Plan participants to substantial and unnecessary fees. Am. Comp., ¶¶ 65-68.

**Reason Immaterial:**   Paragraph 8 is not a factual assertion, but rather a conclusion of law that restates Plaintiffs' excessive fee claim.  The prudence of a particular Plan investment option is immaterial to Defendants' motion because ERISA Section 404(c) assumes fiduciary imprudence at the outset and operates to excuse that imprudence where losses could not occur without a subsequent participant decision to invest.  *See* Defs.' MSJ pp. 23-24, 34-36.

9.    **Allegation**:  As a result of Defendants' failure to leverage the bargaining power of the Plan, participants were charged excessive fees and expenses for their participation in the Plan. Am. Comp., ¶¶ 2, 18.B.vii-ix, xi-xvi, 48-57, 69-74.

**Reason Immaterial:**   Paragraph 9 is not a factual assertion, but rather a conclusion of law that restates Plaintiffs' excessive fee claim.  The prudence of a particular Plan investment option is immaterial to Defendants' motion because ERISA Section 404(c) assumes fiduciary imprudence at the outset and operates to excuse that imprudence where losses could not occur without a subsequent participant decision to invest.  *See* Defs.' MSJ pp. 23-24, 34-36.

10.    **Allegation:**  Entities related to CIGNA Corporation, which were chosen by Defendants to provide investment and management services to the Plan, charged Plan participants fees and expenses that exceeded those which would have resulted from negotiation in an arms-length transaction. Am. Comp., ¶¶ 58-60.

**Reason Immaterial:** Paragraph 10 is not a factual assertion, but rather a conclusion of law that restates Plaintiffs' excessive fee claim. The prudence of a particular Plan investment option is immaterial to Defendants' motion because ERISA Section 404(c) assumes fiduciary imprudence at the outset and operates to excuse that imprudence where losses could not occur without a subsequent participant decision to invest. *See* Defs.' MSJ pp. 23-24, 34-36.

**Contrary Record Evidence:** Most Plan service providers were not CIGNA affiliates. Prior to April 2004, CIGNA retained an affiliate – CG Life – to provide *Plan*-level administrative and account record keeping services and CG Life served as the "investment manager" of the Plan's separate accounts (Defs.' Facts ¶ 35, citing 9/23/02 IC p. 49). After April 2004, these services were provided by PRIAC (Defs.' Facts ¶¶ 27-28, citing 10/15/05 IC p. 48).

Prior to April 2004, CIGNA retained an affiliate –TimesSquare – to provide *fund*-level management services for only three of the Plan's 22 investment funds: the Fixed Income Fund, the S&P 500 Index Fund and the Small Cap Growth/TimesSquare Fund (Defs.' Facts ¶ 31, citing Am. Compl. ¶ 31 and 9/23/02 IC pp. 18, 31, 37). None of the fund managers is currently affiliated with CIGNA (Defs.' Facts ¶ 32, citing 10/15/05 IC pp. 14-46; 12/31/06 Update pp. 15-16).

11. **Allegation:** Because Defendants allowed Plan service providers to engage in revenue sharing, Plan participants were charged more for fees and expenses than were necessary. Comp., ¶¶ 48-57.

**Reason Immaterial:** Paragraph 11 is not a factual assertion, but rather a conclusion of law that restates Plaintiffs' excessive fee claim. The prudence of a particular Plan investment option is immaterial to Defendants' motion because ERISA Section 404(c) assumes

-8-

fiduciary imprudence at the outset and operates to excuse that imprudence where losses could not occur without a subsequent participant decision to invest.  *See* Defs.' MSJ pp. 23-24, 34-36.

12.   **Allegation**:  Defendants failed to capture revenue and profits available to the Plan including proceeds from consultant fees, securities lending, interest earned on temporary cash holdings, and foreign investments. Am. Comp., 18.B.vi, x, 61-63.

**Reason Immaterial:**   Paragraph 12 is not a factual assertion, but rather a conclusion of law that restates Plaintiffs' excessive fee claim.  These revenue streams occur at the fund level and allegedly could have reduced fund-level expenses if "captured" (*see* Defs.' MSJ p. 23) (characterization of Plaintiffs' allegation not disputed in Plaintiffs' Response).  The prudence of a particular Plan investment option is immaterial to Defendants' motion because ERISA Section 404(c) assumes fiduciary imprudence at the outset and operates to excuse that imprudence where losses could not occur without a subsequent participant decision to invest. *See* Defs.' MSJ pp. 23-24, 34-36.

13.   **Allegation:**  Plan participants had no knowledge that they were being charged fees, being charged excessive fees, or that Defendants were using Plan assets to make CIGNA entities profitable for eventual sale at the expense of Plan participants. Am. Comp., ¶¶ 69-74.

**Reason Immaterial:**  The prudence of a particular Plan investment option is immaterial to Defendants' motion because ERISA Section 404(c) assumes fiduciary imprudence at the outset and operates to excuse that imprudence where losses could not occur without a subsequent participant decision to invest.  *See* Defs.' MSJ pp. 23-24, 34-36.

That CIGNA may have indirectly generated revenue from the provision of services to the Plan through subsidiary companies is immaterial.  ERISA contemplates that financial services companies will use their own services to administer the Plans they sponsor.

-9-

*See* Defs.' MSJ p. 43.   Corporate transactions, such as divestitures, are not ERISA-regulated fiduciary acts.   *See* Defs.' MSJ p. 40.

    **Contrary Record Evidence:**   Plan documents provided all fee-related information required under ERISA for Section 404(c) Plans (*see* Defs.' Facts ¶ 60, citing 10/15/05 IC p. 44 (commissions relating to transactions in the CIGNA Stock Fund; Defs.' Facts ¶¶ 73, 75 citing 10/15/05 IC pp. 5, 14-46; 12/31/06 SPD Update pp. 10, 15-16 (descriptions of the annual operating expenses of each investment fund which reduce the rate of return to participants and beneficiaries, expressed as a percentage of average net assets)).   In addition, Investment Choices advises participants that the investment results reported for each fund "are net of the funds' applicable fees" which are "described in the Fees and Charges sections for each fund. . . ." (10/15/05 IC p. 10; 9/23/02 IC p. 10).   Plaintiffs' response to Defendants' Statement of Fact # 5 acknowledges that Investment Choices advises participants that fees and expenses "are paid out of Plan assets in participants' accounts" (Response p. v. ¶ 5, citing 10/15/05 IC p. 48).

III.    **ARGUMENT**

    A.    **Despite The Court's Order, Plaintiffs Have Not Filed A "Comprehensive Response" To The Motion For Summary Judgment.**

In their response to Defendants' statement of Undisputed Material Facts, Plaintiffs reproduce 67 of Defendants' fact statements and claim that they cannot admit or deny *any* of them without discovery because they are based on "booklets and leaflets containing self-serving information for one specific period of time" and "lack proof that anything contained in them is true" (Response pp. x-xi, 5).    Plaintiffs' Response, particularly in light of the Court's September 26 Order, is untenable.

First, Plaintiffs misrepresent the nature of the documents Defendants submit in support of their fact statement.   The documents attached to the summary judgment motion are not miscellaneous "booklets and leaflets" for a single randomly-selected time period.   Defendants submit the Trust Agreement, the Plan Document, the Summary Plan Description and updates to them that date back to 2002, all of which have been authenticated as business records by Plan Administrator John Arko.   These kinds of documents are so elemental to ERISA cases that most courts routinely admit them without hesitation, even on motions to dismiss.   *See, e.g., Degrooth v. General Dynamics Corp.*, 837 F. Supp. 485, 487 (D. Conn. 1993).

Second, Plaintiffs have given the Court no basis for concluding that discovery relating to the documents would be any more illuminating than reading them.   For example, Defendants assert in their fact statement that "Prudential Bank & Trust, F.S.B., a non-CIGNA entity, is the Plan Trustee under a Trust Agreement effective January 1, 2005" (Facts ¶ 18).   In support of that assertion, Defendants cite and attach the Trust Agreement (Ex. A.2).   Yet, Plaintiffs argue that they cannot admit or deny Defendants' fact statement without discovery (Response p. xii).   Why not?   Who would they depose?   What other documents could they possibly ask for?   Plaintiffs do

-11-

not say, even though that is what Rule 56(f) requires *and* it is what the Court *ordered* them to do. Thus, Plaintiffs' Response should be disregarded.  It is not a response at all.

### B.    Fed. R. Civ. P. 12(b)(6) Affords Plaintiffs No Protection Against Indisputably Authentic Plan Documents.

Plaintiffs next seek protection behind Fed. R. Civ. P. 12(b)(6), arguing that, because no discovery has taken place thus far, all of Plaintiffs' allegations must be taken as true, even if those allegations conflict with the Plan documents Defendants have submitted (Response p. iv, 1).  Plaintiffs' argument is meritless.  By complying with Rule 56(c) and CDIL-LR 7.1(D), the documents Defendants have submitted are properly before the Court and Defendants' motion is the functional equivalent of a motion to dismiss converted to one for summary judgment.  *See Woods v. City of Chicago*, 234 F.3d 979, 986 (7th Cir. 2000).  Because Plaintiffs have had notice and an opportunity (indeed, an *order*) to respond, as Rule 12(b)(6) requires, Rule 56 applies in its entirety.  *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997).  Therefore, Plaintiffs no longer get the benefit of their complaint allegations.  *See* Rule 56(e)(2) ("opposing party may not rely merely on allegations or denials in its own pleading"); *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510 (7th Cir. 1999) (observing in context of converted motion that "Rule 56 expressly grants the trial court discretion to look outside of the complaint to make determinations based on the record evidence provided.") (citations omitted).

### C.    ERISA Section 404(c) Applies To Plaintiffs' Excessive Fee Claims.

Plaintiffs assert that ERISA Section 404(c) does not apply as a matter of law to their excessive fee claims (Response pp. 1-4).  They claim that § 2550.404c-1(b)(2)(ii)(A) of the DOL's implementing regulations limits Section 404(c) Plans to charging only reasonable fees *in general*, and that the Plan cannot qualify as an ERISA Section 404(c) Plan if Defendants selected investments options for the Plan that charge unreasonable fees.  Plaintiffs' argument fails.

-12-

First, Paragraph (b)(2)(ii)(A) does not create a general prohibition against allegedly unreasonable fees; it applies only to the "expenses of carrying out investment instructions," specifically, transaction fees, such as stockbroker commissions, that ERISA plans are required to disclose under Paragraph (b)(2)(i)(B)(1)(v).  *See* 57 Fed. Reg. 46,905, 46917 (Oct. 13, 1992) (explaining that the fees referred to in Paragraph (b)(2)(ii)(A) are the same fees referred to in paragraph (B)(2)(i)(B)(1)(v)).  But stockbroker fees are *not* what this lawsuit is about.  Plaintiffs are complaining only about the asset-based fees charged by the funds (*i.e.*, expense ratios) that allegedly overcompensate fund managers when balances rise and lead to "abuses" such as revenue sharing.   No court, and not even the DOL itself, has suggested that Paragraph (b)(2)(ii)(A) applies to these types of asset-based fees.

Second, Paragraph (b)(2)(ii)(A) would conflict with Section 404(c) if given the construction Plaintiffs' suggest.  Plaintiffs agree that fees are but one ingredient in the mix of characteristics that make up an investment ("fees are appurtenant to those options") (Response p. 4 n.6).  Thus, their fee claim in this case is nothing more than a variant of a more general imprudence claim, suggested by the DOL in a footnote to the preamble to its Section 404(c) regulations, that seeks to hold plan fiduciaries solely responsible for selecting "poor" investment options.   However, ERISA Section 404(c) plainly applies to "*any* breach," including the imprudent selection of plan investments, if a loss could not have occurred without a participant decision to invest (Defs.' MSJ pp. 33-39).  *See Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 309-11 (5th Cir. 2007).  The statute does not differentiate one form of fiduciary breach from another.  Therefore, none of the DOL's regulations, including Paragraph (b)(2)(ii)(A), can be read consistent with the statute to carve out a particular class of breach (here, the designation of "expensive" investments) for special treatment.

-13-

**D.     Plaintiffs Fail To Raise A Genuine Issue Of Fact As To The Plan's Compliance With Section 404(c)'s Implementing Regulations.**

Plaintiffs argue that Defendants have failed to proffer enough evidence to prove that the Plan qualifies as a Section 404(c) Plan (Response p. 6).  According to Plaintiffs, Defendants suggest that the DOL's regulations require Section 404(c) Plans to satisfy only three criteria, the regulations actually specify 25 separate criteria, and Defendants submit no evidence showing that the Plan complies with the other 22 requirements (Response p. 6).  Plaintiffs misrepresent both what Defendants argue and what they have proven. First,  Defendants never asserted that Section 404(c) Plans must satisfy *only* three criteria.  Defendants pointed out only that the DOL's requirements can be *summarized* in three primary criteria:  (1) plan type ("individual account plan"); (2) participant control; and (3) broad range of investment alternatives (Defs.' MSJ p. 24).  The observation is indisputably accurate – that is exactly how the DOL summarizes its own regulations.  *See* 29 C.F.R. § 2550.404c-1(b)(1).  Second, Defendants recognize that the DOL specifies several additional sub-criteria to define "control" and "broad range."  *See* 29 C.F.R. § 2550.404c-1(b)(2), (b)(3).  It is unclear how many criteria in total the DOL specifies (it is more or less than 25, depending on how you count them), but there are approximately 18 "control" criteria (29 C.F.R. § 2550.404c-1(b)(2)(i)) and approximately six "range" criteria (29 C.F.R. § 2550.404c-1(b)(3)).  Defendants devoted 49 paragraphs of its fact statement to showing exactly where in the Plan documents each criterion was satisfied (Facts ¶¶ 43-95).  Thus, Plaintiffs' assertion that Defendants ignored these criteria is untrue.

Second, Plaintiffs have failed to identify specifically deficiencies in Defendants' proof that the Plan is a Section 404(c) Plan under the DOL's regulations.  Plaintiffs assert that Defendants failed to show that the Plan offers a broad range of investment options because they did not submit expert testimony to substantiate the investment funds' risk assessments (Response

p. 5).  No expert discovery, however, is needed when the fund descriptions show that they are considerably different from one another, the Plan offers 22 options, and the regulations only require three (29 C.F.R. § 2550.404c-1(b)(3)(i)(B)).  In short, no genuine issue exists as to the breadth of the Plan's offerings.

Plaintiffs claim that no evidence has been submitted to show that participants were told about the investment-related fees that would be charged to their accounts (Response pp. 7-8).  This assertion is false.  *See* Defs.' Resp. to Add'l Facts ## 8, 13, *supra*.  So too is Plaintiffs' contention that no evidence was submitted about participants obtaining information about the Plan or restrictions on investment instructions for any time period but one (Response p. 8).  *See* Facts ¶¶ 43-48 (restrictions); 62-64 (information sources) for the current information.  Earlier periods were covered in other documents attached to Arko's Declaration.  *See, e.g.*, 10/23/03 IC pp. 7-9, 46 (restrictions), pp. 47-49 (information sources).

Finally, Plaintiffs state that no evidence was submitted about whether the Plan included investment alternatives subject to the Securities Act of 1933, presumably because then the Plan would be required to provide prospectuses if it had (Response p. 8).  *See* 29 C.F.R. § 2550.404c-1(b)(2)(i)(B)(1)(viii).  Plaintiffs raise no genuine fact issue.  The Plan states that all Plan assets, except the CIGNA Stock Fund, are accumulated and managed under a PRIAC- (and formerly CG Life-) issued group fixed annuity contract (Facts ¶¶ 25, 35).  Such instruments are exempt from the Act entirely under Section 3(a)(2), which means there are no prospectuses to provide.  *See* 15 U.S.C. § 77c(a)(2) (exempting from Act's coverage "any security arising out of a contract issued by an insurance company" in connection with a qualified plan).  The Stock Fund is treated separately by registering the entire Plan, and the Plan's SPD *is* its prospectus, as the front pages of its constituent documents show (Facts ¶ 68).

1-CH/201354.3

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, and those set forth in their Motion for Summary Judgment, Defendants, CIGNA Corporation, John Arko, and the Corporate Benefit Plan Committee of CIGNA, respectfully request the Court to grant summary judgment in Defendants' favor and dismiss the Amended Complaint with prejudice.

Respectfully submitted,

CIGNA CORPORATION, JOHN ARKO, and THE CORPORATE BENEFIT PLAN COMMITTEE OF CIGNA

By:  __s/ James E. Bayles, Jr.__

Sari M. Alamuddin (ARDC # 06215689)
James E. Bayles, Jr. (ARDC # 06206547)
Attorneys for Defendants
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois  60601
Telephone: (312) 324-1000
Fax:  (312) 324-1001
E-mail:  salamuddin@morganlewis.com
          jbayles@morganlewis.com

Joseph J. Costello (PA Bar No. 44327)
Attorney for Defendants
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103
Telephone: (215) 963-5000
Fax:  (215) 963-5001
E-mail:  jcostello@morganlewis.com

1-CH/201354.3

## CERTIFICATE OF SERVICE

I hereby certify that, on October 19, 2007, I electronically filed the foregoing Defendants'

Reply In Support Of Their Motion For Summary Judgment with the Clerk of the Court using the

CM/ECF system which will send notification of such filing to the following:

> Jerome J. Schlichter
> Kathy A. Wisniewski
> Daniel V. Conlisk
> Heather Lea
> Mark Boyko
> SCHLICHTER, BOGARD & DENTON
> 100 South 4th Street, Suite 900
> St. Louis, Missouri  63102
> jschlichter@uselaws.com
> dconlisk@uselaws.com
> hlea@uselaws.com
> mboyko@uselaws.com

> s/ James E. Bayles, Jr.

> Sari M. Alamuddin (ARDC # 06215689)
> James E. Bayles, Jr. (ARDC # 06206547)
> Attorneys for Defendants
> MORGAN, LEWIS & BOCKIUS LLP
> 77 West Wacker Drive, Fifth Floor
> Chicago, Illinois  60601
> Telephone: (312) 324-1000
> Fax:  (312) 324-1001
> E-mail:   salamuddin@morganlewis.com
> jbayles@morganlewis.com

> Joseph J. Costello (admitted *pro hac vice*)
> Attorney for Defendants
> MORGAN, LEWIS & BOCKIUS LLP
> 1701 Market Street
> Philadelphia, Pennsylvania  19103
> Telephone: (215) 963-5000
> Fax:  (215) 963-5001
> E-mail:   jcostello@morganlewis.com

1-CH/201354.3