IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| KIM NOLTE, SHERRY LEWIS, and THERESA MITCHELL, individually and as representatives of a class of similarly situated persons, and on behalf of the CIGNA 401(k) plan,<br><br>Plaintiffs,<br><br>v.<br><br>CIGNA CORPORATION, JOHN ARKO, THE CORPORATE BENEFIT PLAN COMMITTEE OF CIGNA, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, and TIMESSQUARE CAPITAL MANAGEMENT, INC.,<br><br>Defendants. | No. 2:07-cv-02046-HAB-DGB<br><br>Judge Harold A. Baker<br><br>Magistrate Judge David G. Bernthal |

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

Defendants, CIGNA CORPORATION, JOHN ARKO, THE CORPORATE BENEFIT PLAN COMMITTEE OF CIGNA, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, and CIGNA INVESTMENTS, INC. (incorrectly identified as TimesSquare Capital Management, Inc.) (collectively, "CIGNA"), by their attorneys, hereby oppose Plaintiffs' Motion for Leave to Amend (Doc. # 87).

**I.     INTRODUCTION**

Three years into this litigation, nearly nine months after they filed their operative Second Amended Complaint and after substantial discovery has occurred, Plaintiffs seek permission to file a Third Amended Complaint (their fourth overall) based on facts that have been known to them since 2007.  This amendment is ostensibly intended to make three changes: (1) assert

DB1/64869396

breach of fiduciary duty and prohibited transactions claims against Prudential Retirement Insurance and Annuity Company ("PRIAC") and add it as a new party defendant; (2) add CIGNA Investments, Inc. as a defendant and correctly identify the current corporate name of defendant TimesSquare Capital Management, Inc.; and (3) add additional factual support for their claims against the current Defendants (Motion ¶ 8). None of these changes should be allowed because Plaintiffs offer no good reason for the delay in making them.

To start with, contrary to their contention, Plaintiffs have long known the facts giving rise to their newly-raised claims against PRIAC. Plaintiffs' original complaint filed in February 2007 mentioned PRIAC multiple times, contained the same allegations regarding the prohibited transaction claim pled against PRIAC in the Third Amended Complaint and laid the groundwork for at least one of their breach of fiduciary claims against PRIAC – overcharging the Plan via the use of revenue sharing arrangements. Moreover, CIGNA's two extensive motions challenging Plaintiffs' complaint – also filed in 2007 –not only fully described PRIAC's role in administering the Plan since April 1, 2004, but also informed Plaintiffs that PRIAC performed essentially the same, and certainly no greater, functions with respect to the Plan than current defendant Connecticut General Life Insurance Company ("CG Life") performed prior to April 1, 2004. Thus, Plaintiffs have known for years that PRIAC assumed the same obligations they contend rendered CG Life a fiduciary.

In sum, adding PRIAC at this late date is inexplicable. If added, PRIAC may well engage in early motion practice, and the Court can anticipate significant additional discovery (and attendant discovery disputes) involving PRIAC in which CIGNA will have to remain an active participant. In all events, PRIAC will require time to become familiarized with the significant discovery that already has taken place. Waiting until this time to add PRIAC suggests

a dilatory motive, constitutes undue delay and inevitably will lead to additional delay and discovery that will prejudice CIGNA. The motion should be denied for these reasons alone.

Plaintiffs' request to add CIGNA Investments, Inc. as a defendant should be denied for the same reason. Plaintiffs had information about TimesSquare's provenance for years. Moreover, as Plaintiffs' own proposed amendment confirms, TimesSquare (already a defendant) and CIGNA Investments, Inc. are the same entity. Plaintiffs' proposed amendment only adds confusion because it sues the same entity twice – TimesSquare n/k/a CIGNA Investments, Inc, and CIGNA Investments, Inc. itself.

Finally, Plaintiffs' third requested change – to plead more facts in support of their existing claims against CIGNA – serves no purpose. At this point in the litigation, CIGNA is on notice of the claims asserted in this case. Additional factual allegations in the pleadings are unnecessary.

## II. BACKGROUND FACTS

### A. Plaintiffs' Original Complaint Filed February 27, 2007 (Document # 1) Pled That PRIAC Was A Service Provider Compensated Through Plan Assets Suggested That PRIAC Breached Fiduciary Duties To The Plan.

On February 27, 2007, Plaintiffs filed their original Complaint against certain of the CIGNA defendants. (Document #1). Although not naming PRIAC as a party, Plaintiffs' own allegations clearly demonstrate that even at that early date, they were aware of information that they now assert as the basis for their belated breach of fiduciary duty claim against PRIAC. Plaintiffs repeatedly mentioned PRIAC as occupying critical roles with respect to the Plan during the period after April 1, 2004, including investment manager, recordkeeper and service provider.

> "66. On April 1, 2004, CIGNA sold its Retirement Business to Prudential Retirement Insurance and Annuity Company ("PRIAC"). Through this sale, PRIAC became the Plan's primary investment manager, recordkeeper and service provider.

-3-

> 67.    As part of this sale, CIGNA's Retirement Business transferred approximately $18 billion of assets under management to PRIAC, including the Plan's assets of more than $2.1 billion.
>
> 104.   After CIGNA sold its Retirement Business to PRIAC in April 2004, Defendants allowed such hidden Revenue Sharing transfers to continue, with such payments being directed to, and received by, PRIAC.
>
> 106.   In addition, these Revenue Sharing payments . . . constitute prohibited transactions under ERISA, in that they involve the transfer of Plan assets to, or the use of Plan assets by, or for the benefit of, parties in interest.

In addition, Plaintiffs' own allegations as of that early date evidenced their awareness of the key purported facts allegedly supporting their proposed claim that PRIAC breached its duties to the Plan by overcharging the Plan for its services:

> 112.   While the fees that both CIGNA and PRIAC have charged or are charging Plan for a more than $1.1 billion Fixed Income Fund are excessive, Defendants caused or allowed CIGNA's Retirement Business to charge the Plan an [sic] more severely unreasonable fee than would an unrelated third party."

(Complaint, Document #1, pp. 21, 29, 31).

That recognition on the part of Plaintiffs was crystallized even further in the operative Second Amended Complaint, filed on August 27, 2009. There, although still opting not to add PRIAC as a party at that time, Plaintiffs nevertheless alleged that "PRIAC's expense ratios were still unreasonably excessive . . . causing millions of dollars of excessive fees." (Document #56, ¶ 57).

**B.    CIGNA's Motion to Dismiss Filed April 25, 2007 (Document # 10) And Motion For Summary Judgment Filed on September 10, 2007 (Document #19) Fully Described PRIAC's Role And Advised Plaintiffs That PRIAC Performed The Same Functions As Defendant And Former Fiduciary CG Life.**

Two documents filed by CIGNA in 2007 provided Plaintiffs with detailed information about PRIAC: CIGNA's motion to dismiss the original Complaint, filed on April 25, 2007,

-4-

(Document #10), and its summary judgment motion filed on September 10, 2007 (Document #19). CIGNA's motion to dismiss showed the direct transfer of responsibility from defendant CG Life to PRIAC as a result of the April 1, 2004 sale of the Retirement Business to Prudential:

> On April 1, 2004, CIGNA sold its Retirement Business to Prudential Financial, Inc. for an after-tax profit of $809 million (Complaint ¶¶ 58, 66-68). Although not specifically alleged in the Complaint, part of the sale included all shares of CIGNA Life Insurance Company, which was renamed Prudential Retirement Insurance and Annuity Company ("PRIAC"). Following the sale, PRIAC assumed the obligations of CGLIC [CG Life] to provide investment management, recordkeeping and other administrative services to the Plan, for which PRIAC also earned a fee (Complaint ¶¶ 66, 111).

(MTD, Document # 10, p. 5). In addition, CIGNA attached as an exhibit to its motion the October 15, 2005 version of Investment Choices, a supplement to the Summary Plan Description distributed to Plan participants that focused on the Plan's investment options. (MTD, Document # 10 Ex. A) (cited as "10/15/05 IC at p. __"). As discussed more fully below, Investment Choices described in detail PRIAC's role with respect to the Plan after the April 1, 2004 sale.

CIGNA's motion for summary judgment contained a Statement of Undisputed Material Facts. There, CIGNA devoted 25-paragraphs, supported by Plan documents – many of which were distributed to every Plan participant – and the affidavit of defendant John Arko, that also addressed PRIAC's role during the period following the April 1, 2004 sale of CIGNA's Retirement Business to Prudential. This discussion drew heavily from the October 15, 2005 edition of Investment Choices attached to CIGNA's April 25, 2007 motion to dismiss, and included, in pertinent part, the following:

25. Prudential Retirement Insurance and Annuity Company ("PRIAC") is the issuer of the group fixed annuity contract held by the Trustee under which all Plan assets (except those invested in the CIGNA Stock Fund) are accumulated and managed (10/15/05 IC p. 48; 12/31/06 SPD Update p. 8).

26. In accordance with this contract, all Plan assets (except those invested in the CIGNA Stock Fund) are invested in either PRIAC's general account (via participant investment in the Fixed Income Fund) or one of 20 PRIAC-owned separate accounts (10/15/05 IC pp. 14-42, 48).

27. PRIAC is the "investment manager" of the Plan's 20 separate accounts within the meaning of ERISA Section 402(c)(3), 29 U.S.C. § 1102(c)(3), although it contracts with other entities to provide fund-level investment advice and management services (10/15/05 IC p. 48).

28. Under the group fixed annuity contract, PRIAC also provides administrative and account record keeping services directly to the Plan (10/15/05 IC p. 48).

29. PRIAC does not charge a separate fee for the Plan-level administrative and record keeping services it provides; it is compensated in part through arrangements with the fund managers of the 20 Plan separate accounts to "share" some of the revenue it generates from fund-level asset-based fees and charges (*see* Am. Compl.¶¶ 49-55).

30. The existence of these revenue sharing arrangements is disclosed to Plan participants in a document entitled "Investment Choices," a part of the SPD which contains fund descriptions that discuss in detail Plan investment options (10/15/05 IC pp. 16-46; 12/31/06 SPD Update pp. 15-16).

In the same September 10, 2007 motion, CIGNA provided Plaintiffs with considerable detail about the sale of CIGNA's retirement business and PRIAC's subsequent assumption of the same obligations that CG Life had performed prior to the sale:

33. Prior to April 1, 2004, the Connecticut General Life Insurance Company ("CG Life") and Global were subsidiaries of CIGNA and part of CIGNA's Retirement and Investment Services (referred to informally in the Amended Complaint as the "Retirement Business") (*see* Am. Compl. ¶¶ 31, 41; 9/23/02 IC pp. 49-50).

-6-

34.     While CIGNA subsidiaries, CG Life and Global performed essentially the same services to the Plan that PRIAC and Global currently provide and both were compensated in the same manner (9/23/02 IC pp. 49-50).

35.     CG Life issued the group fixed annuity contract held by the Trustee under which all Plan assets (except those in the CIGNA Stock Fund) were accumulated and managed, served as the "investment manager" of the Plan's 20 separate accounts, and provided Plan-level administrative and account record keeping services (9/23/02 IC p. 49).

36.     CG Life was compensated for the Plan-level administrative and record keeping services it provided to the Plan through revenue sharing arrangements with the separate account fund managers.  For example, the fact sheet for the Large Cap Growth/Goldman Sachs Fund included in the version of Investment Choices distributed to Plan participants during the period CG Life administered the Plan informed Plan participants that CG Life retained Goldman Sachs Asset Management, LP to serve as fund manager, and that as of November 1, 2002, CG Life charged an annual fee of 0.70% of Fund assets "to cover its administrative expenses as well as the fees it pays to the Fund manager" (9/23/02 IC pp. 5, 24-26).

37.     Similarly, as now, Global provided advice and assistance to CIGNA and the Committee in selecting and monitoring Plan investment funds and CIGNA paid Global's fees directly out of its corporate assets (9/23/02 IC p. 50).

38.     Prior to April 1, 2004, CIGNA also retained one of its Retirement Business subsidiaries – TimesSquare Capital Management, Inc. ("TimesSquare") – to provide fund management services for three of the Plan's investment funds:  the Fixed Income Fund, the S&P 500 Index Fund and the Small Cap Growth/TimesSquare Fund (Am. Compl. ¶ 31; 9/23/02 IC pp. 18, 31, 37).

39.     All of these compensation arrangements, as well as the fact that CG Life, Global and TimesSquare were CIGNA subsidiaries, were disclosed to Plan participants (*see, e.g.*, 9/23/02 IC pp. 18, 20, 24, 26, 31, 37, 50).

40.     On April 1, 2004, CIGNA sold its Retirement Business, including CG Life and Global, to Prudential Financial, Inc., and PRIAC was created (5/21/04 Update pp. 1, 3).

> 42. After the sale, PRIAC began providing the Plan with record keeping and administrative services like those provided by CG Life (5/21/04 SPD Update p. 1), although CG Life remained the issuer of the group fixed annuity contract under which the Plan's assets were accumulated and managed until January 1, 2005 (12/22/04 SPD Update p. 6)."

(Document # 19, 9/10/07 MSJ, pp. 6-10).

## III. ARGUMENT

### A. Applicable Legal Standards

Rule 15(a)(2) governs requests for leave to file an amended pleading. It provides, in relevant part:

> A party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(2).

Although Rule 15(a)(2) is permissive, leave is not to be granted automatically. *See Johnson v. Methodist Med. Center of Ill.*, 10 F.3d 1300, 1304 (7th Cir. 1993). The Supreme Court has explained that a court may deny a motion to amend because of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc. . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Ferguson v. Roberts*, 11 F.3d 696, 706 (7th Cir. 1993); *Bethany Oil Co. v. OVC, Inc.*, 241 F.3d 854, 860 (7th Cir. 2001); *Traylor v. Brown*, No. 08-3183, 2010 WL 173898, at *2 (C.D. Ill. Jan. 14, 2010) (Baker, J.). With these standards in mind, it is clear that Plaintiffs' motion to amend should be denied.

**B.   Plaintiffs' Request To Add PRIAC As A Defendant Implicates Several Of The *Foman* Considerations Militating Against Granting Lueave.**

Plaintiffs request leave to file a Third Amended Complaint (their fourth complaint overall) primarily to add PRIAC as a party defendant and to "add allegations of fiduciary breach and prohibited transactions against PRIAC." (Motion ¶ 8). Their request, however, implicates several of the *Foman* considerations discussed above that militate against granting leave. Accordingly, Plaintiffs' motion should be denied.

**1.   Dilatory Motive And Undue Delay.**

Plaintiffs waited until less than a month prior to the current fact-discovery cut-off to request leave to add PRIAC as a defendant. The timing of Plaintiffs' request alone is enough to beg a number of questions. *See Ferguson v. Roberts*, 11 F.3d 696, 707 (7th Cir. 1993) (district court properly questioned why plaintiffs did not seek leave until one month prior to the close of discovery, citing the "seemingly dilatory nature of the request").

Plaintiffs' proffered explanation as to why they waited so long cannot withstand scrutiny. Plaintiffs claim that they should be permitted to add PRIAC at this late date because they allegedly first learned of information to support their claim on March 15, 2010, when CIGNA answered Plaintiffs' First Set of Interrogatories (Motion ¶¶ 6-7). Specifically, Plaintiffs contend that "[o]n March 15, 2010, Defendants filed their Answers and Objections to Plaintiffs'' First Set of Interrogatories. *For the first time*, Defendants acknowledged that PRIAC was a fiduciary to the Plan." (Motion ¶ 7) (emphasis added). The record is clear, however, that Plaintiffs were told, not later September 10, 2007 when CIGNA filed its Motion for Summary Judgment, the following critical facts about PRIAC's roles with regard to the CIGNA Plan:

- PRIAC owned all of the Plan's investment options (except for the CIGNA Stock Fund), which they offered through a group fixed annuity contract (MSJ ¶ 26);

-9-

- PRIAC is the "investment manager" of the Plan's separate accounts and provides administrative and account recordkeeping services to the Plan (MSJ ¶¶ 27-28);

- PRIAC was exclusively responsible for paying sub-advisor fees, which it did by collecting asset-based fees from participant investments in the Plan's separate accounts, using part of the proceeds to pay the fund managers for their services, and retaining the remainder to pay its Plan administration fees and expenses (MSJ ¶¶ 29-31);  and

- Immediately after the sale of CIGNA's "Retirement Business" to Prudential on April 1, 2004, PRIAC began providing services to the Plan like those that defendant CG Life provided before the sale and is compensated in the same manner (MSJ ¶¶ 33-36, 40-42).

In short, Plaintiffs unquestionably were informed more than two and one-half years ago that PRIAC had exactly the same relationship to the Plan after April 1, 2004 that current defendant CG Life had prior to April 1, 2004.  Indeed, in their Second Amended Complaint filed on August 27, 2009, Plaintiffs pled that "CG Life is a Plan fiduciary in that it was the investment manager of the Plan and of CG Life's separate accounts, the underlying assets of which are Plan assets.  It thus exercises discretionary control, respecting the Plan's assets and the disposition of those assets."  (Document # 48, ¶ 30).  Given that Plaintiffs have alleged that CG Life was a plan fiduciary, and now allege in their proposed complaint that PRIAC performed the same Plan functions as CG Life after the sale, Plaintiffs have no excuse for seeking to add PRIAC as a defendant at this late stage.

In addition, Plaintiffs have long been aware of the factual underpinnings of their proposed prohibited transaction claims against PRIAC under ERISA section 406(a), 29 USC

1106(a). Section 1106(a)(1)(C) prohibits any transaction in which services are furnished to a plan by a party in interest. 29 U.S.C. § 1106)(a)(1)(C). Likewise, section 1106(a)(1)(D) prohibits the transfer of plan assets to a party in interest. 29 USC § 1106)(a)(1)(D). ERISA defines a "party in interest" to include "a person providing services" to a plan. 29 U.S.C. § 1002(14)(B). Plaintiffs have known since October 2005 (or at least since they filed suit in February 2007) that PRIAC provides services to the Plan and that PRIAC is compensated for these services using Plan assets. There is no excuse, therefore, for Plaintiffs' delay in seeking leave to amend in order to bring these claims.[1]

### 2. Prejudice

Plaintiffs' request to add PRIAC at this late date also implicates another *Foman* factor – prejudice. Granting Plaintiffs' request to add PRIAC now will ensure additional motion practice and discovery, and therefore additional delay in a case that already had been pending for more than three years. Indeed, PRIAC may well seek to challenge the proposed Third Amended Complaint on the pleadings. Furthermore, because CIGNA, through defendant the Corporate Benefits Plan Committee of CIGNA, continued to exercise oversight responsibility with respect to the Plan even after the April 1, 2004, transaction, CIGNA will necessarily have to remain an active participant in these discovery proceedings. The Seventh Circuit recognizes additional discovery as a form of prejudice under *Foman* militating against granting leave to amend. *See Johnson*, 10 F.3d at 1304 ("[I]t seems likely that Methodist, as it contends, would have to engage

---

[1] To be sure, CIGNA contends that ERISA Section 408, 29 USC § 1108, exempts, these transactions from section 1106's prohibitions. But this does not excuse Plaintiffs' delay in seeking leave to amend. As the Eighth Circuit recently held, Section 1108 is an affirmative defense, and Plaintiffs need not plead around Section 1108 to successfully state a *prima facie* section 1106(a) claims. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601-602 (8th Cir. 2009). In short, Plaintiffs had all of the information they needed in order to bring section 1106(a) claims against PRIAC by October 2005 or by February 2007 at the latest.

in substantial additional discovery and thus be prejudiced if plaintiff's proposed complaint were accepted."); *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) ("If the amendment were allowed, the bank would have been put to additional discovery, and thus prejudiced.").

### 3. **Futility**

Finally, Plaintiffs' request to add PRIAC at this late date implicates a fourth *Foman* factor – futility. Although this is issue one for PRIAC to more fully put forward if Plaintiffs are allowed to proceed against it, PRIAC has several defenses that it can assert against the newly-raised claims against it. One that readily comes to mind and could be the subject of immediate motion practice is ERISA's statute of limitations. Plaintiffs had actual knowledge of PRIAC's role in administering the Plan not later than October 15, 2005, when they received their participant copies of Investment Choices. Plaintiffs had also formulated at least one theory of fiduciary breach against PRIAC by no later than February 27, 2007, when they alleged in their original Complaint that first CIGNA and then subsequently PRIAC overcharged the Plan for investment management and other Plan administration services (Complaint, Document #1, ¶ 112) ("While the fees that both CIGNA and PRIAC have charged or are charging Plan for a more than $1.1 billion Fixed Income Fund are excessive, Defendants caused or allowed CIGNA's Retirement Business to charge the Plan an [sic] more severely unreasonable fee than would an unrelated third party.").

For whatever reason, Plaintiffs chose not to proceed against PRIAC when they filed their original Complaint, even though their core allegations of overcharging against CIGNA and PRIAC were functionally the same, differing only as to degree. Plaintiffs have evidently changed their minds, but they reverse course too late. ERISA Section 413(a)(1) imposes a three-year limitations period for prohibited transactions breach of fiduciary duty claims where the

participant or beneficiary has actual knowledge of the breach. 29 U.S.C. § 1113(a)(1). Taking the generous date of the original Complaint as the latest date Plaintiffs had actual knowledge of their purported breach claims against PRIAC, those claims were time-barred as of February 27, 2010. Their May 7, 2010 request to amend the pleadings to add PRIAC now is untimely by at least two months, and probably more since Plaintiffs were aware of PRIAC's roles as early as October 2005 when they received their copies of Investment Choices.

   **C. Plaintiffs Motion Should Be Denied To The Extent They Seek To Add CIGNA Investments, Inc. As A Party While Retaining TimesSquare Because It Creates Additional Confusion.**

Plaintiffs' second basis for filing a fourth complaint against CIGNA is to "correctly identif[y] the current corporate name of Defendant TimesSquare Capital Management, Inc.("TimesSquare") and add CIGNA Investments, Inc. as a defendant." (Motion ¶ 8). Plaintiffs offer no compelling reason for filing a fourth complaint to make these "corrections" because they have known about the deficiencies for more than three years since CIGNA moved to dismiss the original complaint. Moreover, Plaintiffs' proposed amendment only makes more factual errors, adding to the confusion over defendant TimesSquare's provenance.

With respect to TimesSquare itself, Plaintiffs' proposed fourth complaint adds no new functional allegations. Plaintiffs simply allege that TimesSquare is currently known as "CIGNA Investments, Inc." and that TimesSquare was formerly known as "CIGNA Investment Advisors, Inc." (Motion Ex. A. ¶ 1). This is not new information. In the October 15, 2005 version of Investment Choices, attached as Ex. A to CIGNA's April 25, 2007 Motion to Dismiss (Doc. # 10), Plaintiffs learned that TimesSquare became CIGNA Investment Advisors, Inc. on November 19, 2004 after TimesSquare sold part of its operations, specifically its equity business, to another

-13-

entity. (10/15/05 IC p. 35).[2]  Plaintiffs did nothing to act on this information until now.  In addition, Plaintiffs do not correct any deficiencies with their amendment.  Although they add TimesSquare's current correct name (CIGNA Investments, Inc) to their narrative description, they still separately list TimesSquare as a defendant.  Thus, Plaintiffs' only contribution in the proposed amendment is more confusion.  They retain TimesSquare as a defendant and add CIGNA Investment, Inc. as a *separate* defendant, even though they know full well from their own proposed amended pleading that TimesSquare and CIGNA Investments, Inc. are the same entity.  (Motion Ex. A. ¶ 1).  TimesSquare and CIGNA Investments Inc., therefore, are not properly included as separate party defendants.  *Cf. Twohy v. First Nat'l Bank*, 758 F.2d 1185, 1997 (7th Cir. 1985) (citing lack of diligence as basis for denying leave to amend).

### D. Plaintiffs' Motion Should Be Denied To The Extent They Seek To Plead Unnecessary Additional Factual Details Against CIGNA

Finally, Plaintiffs request this Court to grant leave to file a fourth complaint against CIGNA because they want to "add[] further factual support of fiduciary breaches and prohibited transactions previously alleged against the current Defendants." (Motion ¶ 8). This is an insufficient basis for granting leave to amend. Whatever cathartic effects additional allegations

---

[2] Investment Choices described the fund management history of the Small Cap Growth/TimesSquare fund as follows:

> Since November 19, 2004:  TimesSquare Capital Management, LLC, which is not a CIGNA company.
>
> Before November 19, 2004:  TimesSquare Capital Management, Inc. (now named CIGNA Investment Advisors, Inc.), which is a CIGNA company.  On November 19, 2004, TimesSquare Capital Management, Inc. sold its equity management business to a group including some members of the Small Cap Growth Fund management team.  The sold entity is called TimesSquare Capital Management, LLC.

(10/15/05 IC p. 35).

may have for Plaintiffs, the Federal Rules do not require them. Rule 8 requires a plaintiff to prepare a "short and plain" complaint only to: (1) inform the court of the basis of it jurisdiction; and (2) inform the defendant of the nature of the claims against it and the relief sought. Fed. R. Civ. P. 8(a). Plaintiffs' proposed third amended complaint serves neither notice function. First, this case is, and always had been, exclusively an ERISA case. So the basis of this Court's jurisdiction is already abundantly clear. Second, this case has been pending for more than three years already and substantial fact discovery already has occurred. By now, CIGNA is well aware of the claims asserted in the Second Amended Complaint and does not need the "further factual support" Plaintiffs propose to add to respond effectively to Plaintiffs' allegations.

Rule 15(a) directs district courts to grant leave to file amendments to the pleadings only "when justice so requires." Fed. R. Civ. P. 15(a). It is hardly "justice" to force CIGNA to spend more time and money preparing yet another answer in this case when Plaintiffs' reason for amending the pleadings against CIGNA serves neither of Rule 8's notice functions.

## IV. CONCLUSION

For the foregoing reasons, Defendants, CIGNA Corporation, John Arko, The Corporate Benefit Plan Committee of CIGNA, Connecticut General Life Insurance Company, and CIGNA Investments, Inc., respectfully request that the Court deny Plaintiffs' Motion for Leave to Amend and to grant such other and further relief in Defendants' favor as the Court deems appropriate under the circumstances.

Dated: May 21, 2010

                              Respectfully submitted,

                              CIGNA CORPORATION, JOHN ARKO,
                              THE CORPORATE BENEFIT PLAN
                              COMMITTEE OF CIGNA, THE
                              CORPORATE BENEFIT PLAN
                              COMMITTEE OF CIGNA, CONNECTICUT

GENERAL LIFE INSURANCE COMPANY, and CIGNA INVESTMENTS, INC.

By: _____s/ Azeez Hayne_____

Sari M. Alamuddin (ARDC # 06215689)
James E. Bayles, Jr. (ARDC # 06206547)
Kirsten A. Milton (ARDC # 06286124)
Attorneys for Defendants
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois 60601
Telephone: (312) 324-1000
Fax: (312) 324-1001
E-mail: salamuddin@morganlewis.com
   jbayles@morganlewis.com
   kmilton@morganlewis.com

Joseph J. Costello (PA Bar No. 44327)
Azeez Hayne (PA Bar No. 88356)
Attorney for Defendant
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
Telephone: (215) 963-5000
Fax: (215) 963-5001
E-mail: jcostello@morganlewis.com
   ahayne@morganlewis.com

DB1/64869396

**CERTIFICATE OF COMPLIANCE**

In accordance with CDIL-LR 7.1(B)(4)(c), I hereby certify that the foregoing Defendants' Defendants' Opposition to Plaintiffs' Motion for Leave to Amend complies with the type-volume limitation of Rules 7.1(B)(4)(b)(1) and 7.1(D)(5). The Opposition contains 4,716 words and was prepared in a proportionally spaced typeface (12-point Times New Roman) using Microsoft Word 2003.

s/ Azeez Hayne

Sari M. Alamuddin (ARDC # 06215689)
James E. Bayles, Jr. (ARDC # 06206547)
Kirsten A. Milton (ARDC # 06286124)
Attorneys for Defendants
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive, Fifth Floor
Chicago, Illinois  60601
Telephone: (312) 324-1000
Fax:  (312) 324-1001
E-mail:  salamuddin@morganlewis.com
              jbayles@morganlewis.com
              kmilton@morganlewis.com

Joseph J. Costello (PA Bar No. 44327)
Azeez Hayne (PA Bar No. 88356)
Attorney for Defendant
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103
Telephone: (215) 963-5000
Fax:  (215) 963-5001
E-mail:  jcostello@morganlewis.com
              ahayne@morganlewis.com

DB1/64869396

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 21, 2010, I electronically filed the foregoing Defendants' Opposition to Motion for Leave to Amend with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Jerome J. Schlichter
    Heather Lea
    SCHLICHTER, BOGARD & DENTON
    100 South 4th Street, Suite 900
    St. Louis, Missouri  63102
    jschlichter@uselaws.com
    hlea@uselaws.com

    s/ Azeez Hayne

    Sari M. Alamuddin (ARDC # 06215689)
    James E. Bayles, Jr. (ARDC # 06206547)
    Kirsten A. Milton (ARDC  # 06286124)
    Attorneys for Defendants
    MORGAN, LEWIS & BOCKIUS LLP
    77 West Wacker Drive, Fifth Floor
    Chicago, Illinois  60601
    Telephone: (312) 324-1000
    Fax:  (312) 324-1001
    E-mail:   salamuddin@morganlewis.com
          jbayles@morganlewis.com
          kmilton@morganlewis.com

    Joseph J. Costello (PA Bar No. 44327)
    Azeez Hayne (PA Bar No. _____)
    Attorney for Defendant
    MORGAN, LEWIS & BOCKIUS LLP
    1701 Market Street
    Philadelphia, Pennsylvania  19103
    Telephone: (215) 963-5000
    Fax:  (215) 963-5001
    E-mail:   jcostello@morganlewis.com
          ahayne@morganlewis.com