**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| KIM NOLTE, SHERRY LEWIS, and THERESA MITCHELL, individually and as representatives of a class of similarly situated persons, and on behalf of the CIGNA 401(k) Plan,<br><br>   Plaintiffs,<br><br>   v.<br><br>CIGNA CORPORATION, JOHN ARKO, THE CORPORATE BENEFIT PLAN COMMITTEE OF CIGNA, CONNECTICUT GENERAL LIFE INSURANCE COMPANY, TIMESSQUARE CAPITAL MANAGEMENT, INC., CIGNA INVESTMENTS, INC., AND PRUDENTIAL RETIREMENT INSURANCE AND ANNUITY COMPANY,<br><br>   Defendants. | Case No. 2:07-cv-02046-HAB-DGB<br><br>Judge Harold A. Baker<br><br>Magistrate Judge David G. Bernthal |

**MEMORANDUM IN SUPPORT OF DEFENDANT PRUDENTIAL
RETIREMENT INSURANCE AND ANNUITY COMPANY'S MOTION FOR
CLARIFICATION OF THE RENEWED ORDER ON MOTIONS 70 AND 75 AND
OTHER PENDING MATTERS (MOTIONS 92, 96 AND 128)**

**I.   INTRODUCTION**

   The Court's August 5, 2010 order ("Order") requires the CIGNA Defendants to produce every document they have designated as privileged to plaintiffs' trial team, which may then review the documents and determine whether to dispute the privilege claim.  (ECF No. 134.) Although Defendant Prudential Retirement Insurance and Annuity Company ("PRIAC") did not participate in the briefing process that led to the Order (indeed, it was not even a party when plaintiffs filed their motion to compel production of CIGNA's privileged documents), plaintiffs have stated that they will demand production under the Order of any privileged documents that

1

may later be identified by PRIAC in discovery. Plaintiffs also have stated that they intend to use even assertedly privileged documents in any way they see fit up until the eve of trial, including examining defendants' witnesses on the documents, providing them to their experts, and using them to support or oppose summary judgment. They propose that the Court resolve disputed privilege claims on the eve of trial in the context of motions *in limine* from defendants. PRIAC submits that the Order, if applied in the way plaintiffs envision, will threaten the fundamental fairness of this proceeding by allowing plaintiffs' trial team access to materials assertedly protected by the attorney-client and work product privileges *before* the privileges have been adjudicated by or on behalf of the Court. PRIAC thus seeks clarification of the Order in certain critical respects.

PRIAC understands that the Court has already denied the CIGNA Defendants' motion for reconsideration of the Order. PRIAC does not wish to test the Court's patience in addressing matters of privilege in this case. PRIAC nevertheless is obliged to state its position that, by requiring a party to produce to its litigation adversaries documents the producing party claims are privileged *before* a neutral party has adjudicated the privilege claim, the Order represents a sharp departure from bedrock privilege principles and practices. While plaintiffs have represented to the Court that in "complex" cases, courts frequently order provisional disclosure of documents on the parties' privilege logs to facilitate resolution of privilege claims (Pls.' Opp'n to CIGNA Defs.' Mot. to Appoint a Special Master & Mem. in Support (ECF No. 130) ("Opp'n to Special Master") at 3), PRIAC has located no such precedent. This includes the Court's own case management order in *IKO Roofing*, which plaintiffs cited as precedential in their last brief on the subject, *id.*; there is no such procedure in the *IKO* order. As the Second Circuit Court of Appeals noted in condemning the procedure advocated by plaintiffs here, allowing an adversary to review

documents subject to a claim of privilege as a matter of routine discovery procedure provides an unfair advantage to the adversary—discovery leads, insights into new legal theories, and other unfair derivative opportunities—that simply cannot be reversed through an after-the-fact order upholding the privilege. *Chase Manhattan Bank v. Turner & Newall, PLC*, 964 F.2d 159, 165 (2d Cir. 1992).

Accordingly, PRIAC asks the Court to clarify the Order to mitigate the invasion of the attorney-client privilege and attorney work product doctrine, and the substantial prejudice that will result, if PRIAC were required to disclose its privileged documents to plaintiffs. PRIAC requests, in particular, that the Court order plaintiffs to designate a lawyer or lawyers—separate from the legal team responsible for litigating this case—to review documents that the defendants claim are privileged, and to handle the presentation of any challenges to the privilege claims before this Court. The Court also should take other steps to ensure that plaintiffs' trial team is afforded access to documents subject to a claim of privilege if and only if the Court determines that the documents are not privileged. Only by imposing these additional requirements can the protocol that plaintiffs now advocate be administered without compromising the fundamental fairness of this proceeding.

## II.     BACKGROUND

On March 26, 2010 and April 16, 2010, well before amending their complaint to add PRIAC as a defendant, plaintiffs moved to compel the CIGNA Defendants to produce documents that the CIGNA Defendants had designated as subject to the attorney-client privilege.[1] The Court ultimately granted those motions by Order dated August 5, 2010. (ECF No. 134.) For documents the CIGNA Defendants had withheld as privileged, the Court "ordered [the CIGNA

---

[1] (*See* Emergency Mot. to Compel Production of Documents and Mem. in Support (ECF No. 70); Mot. to Compel the Production of Non-Privileged Documents and Mem. in Support (ECF No. 75).)

Defendants] to produce the material and information sought by the plaintiffs in those motions in an unredacted and complete form," with the understanding that this production would not waive any claims of attorney-client privilege. (*Id*. at 2.) The Court further specified that "[i]f in subsequent rulings by the court privilege is found to exist, the plaintiffs will be barred from using the privileged information as evidence in their case and will be required to return the privileged material to the defendants without retaining copies." (*Id*.)

Having been added as a defendant in this action only two months ago, PRIAC has yet to designate any documents as privileged. Yet, while the Order expressly applies only to the CIGNA Defendants, which were the subject of plaintiffs' motions to compel, plaintiffs have stated that they expect PRIAC to disclose any privileged documents it identifies during the discovery process. From experience with ERISA actions of similar complexity and scope, PRIAC's counsel has little doubt that the scope of plaintiffs' discovery requests will require it to identify certain documents as privileged. Accordingly, pursuant to its meet and confer obligations under the Local Rules, PRIAC sought plaintiffs' and the CIGNA Defendants' consent to a clarification of the Order preventing plaintiffs' trial team from reviewing the documents on defendants' privilege logs until the Court has determined the documents non-privileged vis-à-vis plaintiffs. (*See* Email from B. Boyle to T. Doles dated Aug. 12, 2010 (attached as Ex. 1).) While the CIGNA Defendants have indicated their support for the clarification, plaintiffs did not agree to PRIAC's proposal. (*See* Email from T. Doles to B. Boyle dated Aug. 13, 2010 (attached as Ex. 1).)

PRIAC therefore moves the Court for clarification of the Order, as detailed below. PRIAC seeks clarification of the Order now, rather than after it has begun to identify documents

on a privilege log, both because of the importance of the issue, and to avoid any later suggestion from plaintiffs that—in postponing presentation of this issue—PRIAC has slept on its rights.

## III. ARGUMENT

### A. Unless Clarified, The Order Will Irreparably Invade Defendants' Lawful Privileges and Threaten the Fundamental Fairness of this Proceeding

"It is a fundamental tenet of the law of evidence that, generally, communications between attorney and client are privileged and not subject to compelled disclosure." *Pfizer, Inc. v. Lord*, 456 F.2d 545, 548 (8th Cir. 1972). The privilege is "founded upon the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law . . . which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn*, 128 U.S. 464, 470 (1888). *See also Radiant Burners, Inc. v. American Gas Ass'n*, 320 F.2d 314, 318 (7th Cir. 1963) ("In order to promote freedom of consultation of legal advisers by clients, the apprehension of compelled disclosure by the legal advisers must be removed; hence the law must prohibit such disclosure except on the client's consent.") (quoting 8 Wigmore, *Evidence* § 2291 (McNaughton Rev. 1961)).

The privilege and its central purpose are compromised by the disclosure of potentially protected documents to an adverse party without the benefit of prior judicial review. Clients will justifiably hesitate to entrust their counsel with sensitive legal issues when their confidences are likely to be shared with opposing counsel. For this reason, courts have traditionally served a gate-keeping function by deciding whether documents are privileged *before* requiring their disclosure to adverse parties. *Chase*, 964 F.2d at 165. Further, because an "uncertain privilege" is "little better than no privilege at all," courts facing challenging privilege questions should generally favor maintaining the privilege rather than ordering disclosure. *See Wachtel v. Health*

5

*Net, Inc.*, 482 F.3d 225, 237 (3d Cir. 2007) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981) (discussing "fiduciary exception" to attorney-client privilege in an ERISA case).

The procedure reflected in the Order breaks with this tradition, and is contrary to well-established precedent.[2] While, in argument before this Court, and in written memoranda, plaintiffs urged that the Order's disclosure procedure has been frequently used in "complex" cases (Opp'n to Special Master at 3), this is untrue. PRIAC has located no similar order in MDL cases, or in other complex litigation. And, despite plaintiffs' statement to the contrary, *id.*, the MDL Case Management Order to which the Order appears to refer simply does *not* require the defendants to produce documents they claim are privileged without a prior court decision on the privilege claims. Instead, it refers to the "withholding" of privileged documents by the parties, requires the parties to serve "privilege logs" when they do so, and refers to a protective order governing privileged documents that may be inadvertently disclosed in discovery. (*See* Case Management Order, *In re IKO Roofing Shingle Prods. Liab. Litig.*, No. 2:09-md-02104-MPM-HAB, at ¶¶ 28, 31 (C.D. Ill. Mar. 5, 2010), ECF No. 24 (attached as Ex. 2).)

In fact, where appellate courts have reviewed procedures similar to those in the Order, they have disapproved them. In *Chase*, for instance, a magistrate had ordered the defendant to produce all the documents on its privilege log—with the exception of a small class of particularly sensitive, "radioactive," documents—to the plaintiffs, who could then either agree with or challenge the privilege claim. 964 F.2d at 161-62. The magistrate concluded that this process would reduce the time dedicated to discovery disputes without waiving or compromising the attorney-client privilege. *Id.* The Second Circuit disagreed, and granted the defendant's

---

[2] *See Chase*, 964 F.2d at 164 ("Our research suggests that . . . such a procedure is, but for one precedent, non-existent."); *id.* (holding that the "sole precedent" for such a privilege review procedure appeared in a "unreported decision by a district court in another circuit, which contains an order but no reasoning . . .").

6

petition for a writ of mandamus.³  The Court observed that permitting an adverse party to review documents to which a claim of privilege attached "allows one kind of critical disclosure—to opposing counsel in litigation—that the privilege was designed to prevent." *Id*. at 164.  *See also In re Ford Motor Co.*, 110 F.3d 954, 963 (3rd Cir. 1997) ("once putatively protected material is disclosed, the very 'right sought to be protected' has been destroyed.") (citation omitted).  As a result, "a pertinent aspect of confidentiality will be lost, even though communications later deemed to be privileged will be inadmissible at trial." *Id*. at 165.  The Second Circuit concluded that such a procedure also would undermine a core purpose of the privilege—the free flow of information between attorney and client—because "an attorney cannot assure a client of complete confidentiality" where adverse parties are given complete access to attorney-client communications.  *Id.*⁴

The Second Circuit was unpersuaded that an after-the-fact order sustaining the asserted privileges could fulfill the purposes of the privileges.  The court reasoned that the practice of requiring disclosure of privileged documents may afford the adversary an opportunity to make derivative use of the documents—that is, it "may alert adversary counsel to evidentiary leads or give insights regarding various claims and defenses." *Chase*, 964 F.2d at 165.  An adversary is simply not entitled to litigate with the benefit of leads and insights from its opponent's privileged

---

³ While the Second Circuit's opinion focused on the privilege issues, the court also questioned the magistrate's view that its privilege procedure would reduce the time devoted to discovery disputes.  As the court explained, any judicial time saved could be "offset by 'fruit of the poisoned tree' arguments that will inevitably arise when an adversary attorney is allowed to see documents that are later held to be privileged and inadmissible at trial. . . Some of the economies gained by the practice of pre-adjudication disclosure may thus be offset by later proceedings seeking to unscramble the effects of the disclosure of materials subsequently held to be privileged." *Chase*, 964 F.2d at 165.
⁴ *See also In re Grand Jury Subpoenas 04-124-03 and 04-124-05*, 454 F.3d 511, 523-24 (6th Cir. 2006) (reversing order requiring production of third party documents related to a grand jury target to the government without prior adjudication of privilege claims).

documents. "Moreover," as the Second Circuit explained, "attorneys cannot unlearn what has been disclosed to them in discovery." *Id. See also Am. Nat'l Bank and Trust Co. of Chicago v. Equitable Life Assurance Soc'y of the United States*, 406 F.3d 867, 880 (7th Cir. 2005) ("[Plaintiff] has seen documents it never should have had. We cannot wipe [plaintiff's] collective mind clean of the information it has acquired."); *United States v. Phillip Morris Inc.*, 314 F.3d 612, 622 (D.C. Cir. 2003) (cautioning that opposing counsel could use privileged documents "to pursue new leads on discovery and witness questioning.").

These precedents make clear that a court-ordered disclosure of privileged documents to the adversary's trial team before the court has decided the documents' privileged status irreparably harms the producing party, even if the court ultimately rules that the privileged documents cannot be introduced at trial. *Chase*, 964 F.2d at 165. *See also Upjohn*, 449 U.S. at 396 ("[d]iscovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary") (quoting *Hickman v. Taylor*, 329 U.S. 495, 516 (1947) (Jackson, J., concurring)). That the Order invokes the non-waiver provision in Rule 502(d) of the Federal Rules of Evidence is thus of no moment. Without additional procedural protections, the disclosures required by the Order will allow plaintiffs' trial team to make derivative use of the materials on defendants' privilege logs even if the Court later determines the documents off-limits at trial.[5]

---

[5] Rule 502(d) was not intended to change the traditional process of privilege adjudication in federal litigation, such as by authorizing the court to order sweeping productions of a party's assertedly privileged materials to its adversary over its objections before its privilege claims can be adjudicated. The rule merely permits the Court to facilitate the discovery process with respect to large volumes of paper or electronic material, by ordering that any disclosure of privileged material that *does* occur (for instance, as part of an inspection process) will not waive any applicable privileges in the subject proceeding, or any others. *See* Fed. R. Evid. 502 explanatory note ("The rule seeks to provide a predictable, uniform set of standards under which the parties

In short, unless clarified in critical respects as suggested below, the Order will irreparably invade defendants' lawful attorney-client and work-product privileges.

**B.     The Court Should Clarify the Order to Ensure That Plaintiffs' Trial Team Cannot Review the Documents on Defendants' Privilege Logs Until the Court Has Ruled Them Non-Privileged**

PRIAC's concern that the Order will unfairly allow plaintiffs' trial team access to privileged insights can be mitigated by clarifying the Order to require plaintiffs' counsel to designate a lawyer or lawyers separate from the trial team to review the documents on defendants' privilege logs, and to handle any privilege challenge proceedings. This requirement should prevent plaintiffs' trial team from reviewing any documents on the defendants' privilege logs until the Court determines that they are not privileged.

PRIAC's request is based on sequestration protocols that are used to protect potentially privileged documents when the government executes search warrants. Under these protocols, a "taint team" is assembled from government attorneys who are not connected to the government's trial team to review the materials obtained through execution of the search, and to segregate any potentially privileged materials for later judicial determination. *See United States v. Segal*, 313 F. Supp. 2d 774, 777 & n.1 (N.D. Ill. 2004) ("One of the preferred methods identified in the [Department of Justice] guidelines for segregating privileged communications is the use of a prosecution 'taint team.'"); *United States v. Taylor*, Crim. No. 10-86-PH, 2010 WL 2924414, at *1 (D. Me. July 16, 2010) (approving a "taint team" after the addition of "certain additional protections for the benefit of the [producing party]" and noting the court's "expectation and presumption that the Government's privilege team and the trial prosecutors will conduct themselves with integrity.") (citation omitted).

---

can determine the *consequences* of a disclosure of a communication or information covered by the attorney-client privilege or work-product protection.") (emphasis added).

The "taint team" is tasked with reviewing all of the putatively privileged documents—without communicating their contents to the trial team—and is responsible for litigating any privilege disputes over those documents. Neither the disputed documents, nor their contents, are shared with the trial team unless and until a court determines that they are not privileged. PRIAC respectfully suggests that a similar procedure, if adopted here, would reduce the prejudice to it and the other defendants, and any unfair advantage to plaintiffs, resulting from defendants' disclosure to plaintiffs of documents that the defendants claim are privileged.

Under the proposed order submitted by PRIAC, plaintiffs would, first, be required to identify a lawyer or lawyers *separate from their trial team* to review any privileged documents disclosed under the Order and to participate in any process for resolving the documents' privileged status ("the Privilege Team"). Second, under the proposed clarification, the Privilege Team would be able to review the documents only by means of a World Wide Web-based review tool that does not permit downloading, copying, or printing. This procedure would further minimize the risk of exposing the plaintiffs' trial team to assertedly privileged documents before the privilege claims can be adjudicated. Third, the proposed clarification would require the Privilege Team members to certify to the Court that they have strictly complied with the Court's directives. In particular, these lawyers would aver to the Court in sworn declarations, in advance, that they will not disclose the documents, or anything concerning their substance, to the plaintiffs' trial team until and unless the privilege issue is determined by the Court in plaintiffs' favor. Then, after the privilege adjudication process is over, they would be required to aver that they did not disclose the documents, or anything concerning their substance. Finally, the proposed clarification would require the members of plaintiffs' trial team to make similar certifications to the Court—at the outset, averring that they will not access, or attempt to access,

10

any material describing the substance of defendants' privileged documents (such as notes, or draft briefs, or memoranda) that is maintained by the Privilege Team; and after the privilege adjudication process is over, averring that they have not done so.

The procedure suggested by PRIAC will not deprive the Court of the adversarial presentation it desires on difficult privilege questions, such as application of the ERISA "fiduciary exception." (*See* Order at 1 ("Whether a particular problem discussed is one that involves plan design or administration is beyond the court's ability to grasp just by reading the document.").) While plaintiffs' Privilege Team will not be permitted to reveal to the trial team anything of substance concerning the documents on defendants' privilege logs, the trial team may freely communicate information *to* the Privilege Team. As a result, the Privilege Team may obtain from the trial team all information concerning the plaintiffs' allegations and legal theories necessary to fully and fairly litigate the privileged status of the documents, taking into account the "context" of the dispute.

This procedure is no panacea—the risk of inadvertent leaks and errors will remain. *See In re Grand Jury Subpoenas*, 454 F.3d at 523 (expressing concern that a government "taint team" would leak privileged information to the trial team). But PRIAC submits that the procedure should provide reasonable assurance that plaintiffs' trial team will be unable to make derivative use of lawfully privileged documents in conducting discovery and preparing their case for trial.

IV.    **CONCLUSION**

For the foregoing reasons, PRIAC respectfully requests that the Court clarify its Order, as detailed herein and in the proposed order is attached to PRIAC's motion.

11

Dated:  August 17, 2010		Respectfully submitted,

/s/ Brian D. Boyle

Robert N. Eccles
Brian D. Boyle
Shannon M. Barrett
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300

John Grossbart
Geoffrey J. Repo
SONNENSCHEIN NATH & ROSENTHAL LLP
233 S. Wacker Drive
Suite 7800
Chicago, IL  60606
(312) 876-8000

*Attorneys for defendant
PRIAC Retirement Insurance and
Annuity Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 17, 2010, I filed this document with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

>Troy A. Doles
>SCHLICHTER BOGARD & DENTON
>Suite 900
>100 S. 4th Street
>St. Louis, MO  63102
>
>Sari M. Alamuddin
>James E. Bayles, Jr.
>MORGAN LEWIS & BOCKIUS, LLP
>77 West Wacker Drive
>Fifth Floor
>Chicago, IL  60601
>
>Azeez Hayne
>Joseph J. Costello
>MORGAN LEWIS & BOCKIUS, LLP
>1701 Market Street
>Philadelphia, PA  19103

/s/ Brian D. Boyle

DC1:810328.7