UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| KIM NOLTE et al., ) | |
|         Plaintiffs, ) | |
| v.  ) | No: 2:07-cv-2046-HAB-DGB |
|         ) | |
| CIGNA CORPORATION et al., ) | |
|         ) | |
|         Defendants. ) | |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

    This settlement constitutes the largest monetary recovery for an ERISA 401(k) excessive fee case in history. The Settlement Agreement achieves, to a significant degree, the relief sought by this litigation — including a $35,000,000 Gross Settlement Amount, as well as significant and valuable affirmative relief designed to protect the Plan and its participants from future excessive fees and imprudent investment options.

    The monetary payment and affirmative relief obtained on behalf of Plan Participants and beneficiaries is substantial and will provide meaningful relief to each member of the Class.[1]

    Before Plaintiffs filed this action, few cases had been filed against fiduciaries in

---

[1] The Settlement provides for four categories of cash benefits, or "Bands" based on the length of time Class members held assets in the Plan and how many of the challenged investment options the participant invested in. Under the Plan of Allocation, each Band has approximately equal numbers of participants. Those Class members who are current participants will have their monetary sum contributed directly in their tax-deferred retirement accounts, while Class members who are former participants were offered the choice of receiving a check or having their distribution rolled over into a qualified retirement account.

1

large employer 401(k) plans alleging breaches of fiduciary duties resulting in excessive recordkeeping, administrative and investment management fees, as well as mismanagement of cash holdings in a company stock fund. The settlement was the product of years of intense, adversarial litigation and months of arms-length negotiation and mediation. Plaintiffs respectfully submit that in light of the litigation risks further prosecution of this action would inevitably entail for all parties, it would be proper for the Court to grant final approval of the settlement by signing and entering the proposed Final Order and Judgment. The parties' proposed Final Order and Judgment is filed with the Court, concurrently herewith.

## I. THE CLAIMS IN THE CASE

Plaintiffs alleged that Defendants were fiduciaries of the Plan and that Defendants engaged in breaches of fiduciary duty under 29 U.S.C. § 1104(a) and 29 U.S.C. §1106(b). In particular, Plaintiffs allege Defendants breached their fiduciary duty to ensure that *the fees and expenses paid out of the assets in the Plan* were reasonable and not excessive and their fiduciary duty to operate the plan solely in the interest of its participants and beneficiaries.

The allegedly excessive fees include administrative and recordkeeping fees, as well as excessive fees specific to certain plan investment options, including the Fixed Income Fund.

### A. The Action

Plaintiffs are represented by Schlichter, Bogard & Denton, the preeminent firm in 401(k) fee litigation, and Defendants were separately represented by Morgan Lewis and O'Melveny & Myers, two of the fifty largest law firms in the United

States. This battle of national counsel experienced in such cases produced a docket comprised of over 400 entries spanning six and a half years, ancillary proceedings in Philadelphia which Defendant Cigna filed to curtail this litigation, over 20 fact depositions, including the former CEO of Cigna Corporation, and the current CEO of Prudential, seven expert depositions, onside document reviews in Connecticut and Pennsylvania, and production of one million pages of documents. There is simply no question that this litigation was hard fought.

In the midst of this, an initial mediation was held on July 21, 2011 with nationally recognized mediator Hunter Hughes. The mediation failed to reach any resolution of the case. On April 1, 2013, the parties conducted a second, all-day mediation before the mediator in St. Louis. After that mediation, negotiations continued for several weeks among the parties. The intense negotiations continued without resolution for six-weeks until, on June 17, 2013, the Parties signed the Settlement Agreement.

## II.  THE TERMS OF THE PROPOSED SETTLEMENT

In exchange for the dismissal of the Action and for entry of the Judgment as provided for in the Settlement Agreement, Defendants will make available to Settlement Class Members the benefits described below (the "Settlement Benefits").

### A.  Monetary Relief

Defendants have already deposited $35,000,000 (the "Gross Settlement Amount") in the settlement fund. The fund will be used to pay the participants' recoveries as well Class Counsel's attorneys' fees and costs, administrative expenses of the settlement, and the Class Representatives' compensation as described in the

Settlement Agreement.

### B. Non-Monetary Affirmative Relief

In addition to the monetary payment, the relief provided in the Settlement will include substantial affirmative relief for years to come. Cigna has agreed to certain changes and additions to its processes for obtaining investment products and services for the Plan. Specifically, Cigna will undertake a competitive bidding process for Plan recordkeeping and administrative services — which it had not done for years — and will retain an independent consultant to review the alternatives available in the market for servicing the Plan's Fixed Income Fund. Additionally, Cigna will continue to comply with recently implemented Department of Labor Regulations that will increase and enhance communication with Plan participants and beneficiaries about 401(k) investment options and associated fees. Further, during the three-year Settlement Period, Cigna will continue its practice of not including retail-class mutual funds as core investment options in the Plan.

These benefits represent a significant value to the Plan above and beyond the monetary settlement. As Plaintiffs outlined in their Memorandum in Support of Plaintiffs Application for Attorneys' Fees, anticipated reductions in the recordkeeping fees alone may bring $5 million in fee savings per year for the benefit of the Class — which, if saved over ten years, would carry a present value of $48 million. Additional savings from the other requirements of the affirmative relief are more difficult to quantify but nevertheless carry significant value for the Plan and the Class.

### C. Administrative Expenses and Incentive Awards

The notice costs and all costs of administration of the Settlement will come out of the $35,000,000 Gross Settlement Amount. Incentive payments to the five Named Plaintiffs in the amount to be approved by the Court will also be paid out of the Gross Settlement Fund. Plaintiffs seek $25,000 for each of the Named Plaintiffs. This amount is well in line with precedent recognizing the value of individuals stepping forward to represent classes — particularly in a case like this, where the potential benefit to any individual does not outweigh the cost of prosecuting the claim and there is significant risk, including the risk of no recovery and the risk of uncompensated time and energy devoted to a lawsuit with uncertain prospects for success.

### D. Attorneys' Fees

Finally, Plaintiffs' Counsel have requested attorneys' fees to be paid out of the Settlement Fund in the amount of $11,666,667 (one-third of the Gross Settlement Amount as allowed under the Settlement Agreement), plus a cost award of $928,045.87. Doc. 406.

### E. Summary

The proposed Settlement balances the risks, costs, and uncertainties of continuing litigation with the certainty of benefits that provide substantial meaningful recovery for the Class as well as affirmative non-monetary relief which will benefit the Class in the future. The Settlement is the result of serious and complex negotiations including all-day mediations with nationally recognized mediator Hunter Hughes, followed by additional extended negotiation sessions

5

concerning the affirmative relief and other non-monetary settlement terms. Plaintiffs' Counsel believes the proposed Settlement is fair, adequate, and reasonable and in the best interests of the Class, and that the named Plaintiffs are adequate class representatives. The relief that would be provided by the Settlement is adequate and reasonably within what might have been possible to obtain through extended litigation and trial, particularly when providing for the expenses and delays of continuing litigation. Finally, out of over 200,000 class members identified and mailed individual notices of the settlement, only one filed a substantive objection — less than half of one one-thousandth of a percent. This *de minimus* objection rate is a telling display of support for from the Class.

### III. ARGUMENT

The Settlement Agreement satisfies all applicable criteria for approval, including the well-established factors frequently cited by District Courts in the Seventh Circuit. The Settlement Agreement should be approved as fair, reasonable, and adequate in all respects.

**A. The Applicable Legal Standards**

Federal courts favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1197 (7th Cir. 1996) (*citing, e.g., E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986)). Although such settlements must be approved by the district court, its inquiry is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate. *Id*. (*citing Hiram Walker*, 768 F.2d at 889); *Synfuel Tech., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006) (*citing* Fed. R. Civ. P.

6

23(e)(2)).

There is a strong presumption that a class action settlement meets this standard when it is the result of arm's length negotiations. *Great Neck Capital Appreciation Inc. Partnership, L.P. v. PricewaterhouseCoopers, LLP*, 212 F.R.D. 400, 410 (W.D. Wis. 2002); *see also, Newberg on Class Actions* § 11.41 at 11-88 (3d ed. 1992). The Settlement Agreement here is the result of lengthy, contentious and complex arm's length negotiations between the Settling Parties. Counsel for Plaintiffs, as well as both Defendant sides, are experienced and thoroughly familiar with the factual and legal issues presented.

Starting with a presumption in favor of approving the settlement, the Court then should consider five factors in determining the "fairness" of a class action settlement. *Synfuel*, 463 F.3d at 653; *Isby*, 75 F.2d at 1198-99. Each factor is discussed below.

**B. The Settlement Is Fair, Reasonable, and Adequate Under The Five Relevant Factors**

District Courts in the Seventh Circuit consider five factors in determining whether a class action settlement is fair, reasonable, and adequate: (1) "the strength of plaintiffs' case compared to the amount of defendants' settlement offer," (2) "an assessment of the likely complexity, length and expense of the litigation," (3) an evaluation of the amount of opposition to settlement among effected parties," (4) "the opinion of competent counsel," and (5) "the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel*, 463 F.3d at 653; *Isby*, 75 F.2d at 1198-99.

7

The Court should not focus on individual components of the settlement, but rather view the settlement in its entirety. *Isby*, 75 F.2d at 1199. It should consider the facts "in the light most favorable to the settlement." *Id*. Plaintiffs respectfully submit that the five relevant factors plainly and decisively favor approval of the Settlement Agreement.

1. <u>The strength of plaintiffs' case compared to the amount of defendants' settlement offer</u>

As discussed above, a significant theory for recovery by Plaintiffs is based on Defendants' failure to periodically competitively bid recordkeeping services for the Plan. This permitted Cigna, and later PRIAC to charge allegedly excessive and unreasonable fees to all participants in the Plan. Plaintiffs contend that these actions constituted breaches of ERISA §404(a)'s duty of prudence. Defendants deny these claims.

ERISA Section 404(a)(1)(A) provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." Additionally, Plaintiffs allege that Cigna Defendants failed to lie up to ERISA's fiduciary standards by selecting and continuing to offer a Fixed Income Fund that solely invested in the general account of Defendants.

Plaintiffs' counsel continues to believe in the merits of these claims. However, there are significant legal obstacles and defenses which render recovery in this case uncertain, and, if there is a recovery, affect the amount. Defendants deny all of

8

Plaintiffs' allegations, deny that they committed or participated in any fiduciary breaches or other wrongdoing, have vigorously contested Plaintiffs' allegations, and would continue to do so. Defendants would argue that Cigna's and Prudential's compensation were reasonable, and that the Fixed Income Fund was prudently structured consistent with Cigna's fiduciary duties. Prudential would also argue that they were not fiduciaries with respect to the actions alleged by Plaintiffs. Finally, the issue of whether many of Plaintiffs' claims were released in prior litigation remains pending before the Third Circuit.

Defendants would also point to *Hecker v. Deere*, 556 F.3d 575 (7th Cir. 2009) ("*Hecker I*"), *reh'g denied*, 569 F.3d 708 (7th Cir. 2009) ("*Hecker II*"), *cert. denied*, 130 S.Ct. 1141 (2010) and *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011). In *Hecker I*, the Seventh Circuit upheld the dismissal of a claim involving retail mutual funds through which allegedly excessive recordkeeping fees were paid in a large 401(k) plan. In *Hecker II*, the Seventh Circuit narrowed *Hecker I*, but affirmed its decision. The Court reasoned that *Hecker I* was "tethered" to the facts and pleadings of that particular case, but re-affirmed that the plaintiffs failed to allege that cheaper separately managed accounts would provide comparable services to the retail mutual funds. Plaintiffs' Counsel were also counsel for the plaintiffs in *Hecker* and are intimately familiar with the holding.

The *Loomis* decision, also from the Seventh Circuit, upheld the dismissal of similar claims based on the *Hecker* decision. *Loomis*, 658 F.3d at 673. The *Hecker* and *Loomis* decisions, as well as other litigation from outside of the Seventh Circuit,

9

raise questions creating some uncertainty regarding the likelihood of success on these claims and the extent of recovery at trial. Defendants construe these decisions to foreclose many or all of Plaintiffs' claims. Defendants would also argue that *Hecker* supports Defendants' argument that Plaintiffs' claims are barred in whole or in part by ERISA Section 404(c)'s safe harbor for participant-directed investments. Plaintiffs disagree.

In sum, findings of liability and damages in this action are uncertain. The first factor supports the Court's granting final approval of the Settlement Agreement.

2. <u>The likely complexity, length and expense of the litigation</u>

The instant lawsuit is quite complex in multiple respects. First, this is one of the first cases to allege breaches of fiduciary duty against fiduciaries of a large 401(k) plan due to allegedly excessive fees. Thus, the case presents novel legal issues. Second, the cases would require an extensive trial lasting several weeks with no less than seven highly experienced consulting and testifying expert witnesses with extensive reports, as well as tremendous resources to bring the case through trial. Recovery of damages at all is not certain as discussed above.

The second factor also supports the Court's granting final approval of the Settlement Agreement.

3. <u>The amount of opposition to settlement among effected parties</u>

Pursuant to this Court's Order preliminarily approving the settlement (Doc. 403), notice of the Settlement Agreement was mailed to 202,459 individuals believed to be Settlement Class Members. In addition, the Notice was distributed electronically and made available over the Internet via the Settlement website. This

notice complies with the requirements of Fed. R. Civ. P. 23 and due process, as it was calculated to ensure individual notice to each of the class members.

After having received notice and an opportunity to object, only *one* out of over 202,000 Settlement Class Members filed timely objections with the Court. That objection consisted of one sentence, and was made before Plaintiffs' Counsel had even filed their motion for attorneys' fees. If only one tenth of one percent of the class had objected, the Court would have received over 200 objections, one on-thousandth of a percent would have been two objections. Given the significant size of the class, only having one objection is a telling sign of overwhelming support for the settlement by the members of the class.

Indeed, Courts have approved settlements where the objection rate was thousands of times higher. *See Isby*, 75 F.3d at 1200 (affirming approval of settlement where 13% of the class submitted written objections in response to the notice of settlement); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (settlement of class action approved despite objection of 45% (180 out of 400) of the class members)).

One objection by Settlement Class Members does not present a barrier to the Court granting final approval of the Settlement Agreement. Moreover, notice was sent to the Attorneys General of all states where Settlement Class Members reside, as well as the United States Attorney General, as required under the Class Action Fairness Act, 28 U.S.C. § 1715. No objection or opposition was received from an Attorney General. The third factor supports the Court's granting final approval of

the Settlement Agreement.

    4.   <u>The opinion of competent counsel</u>

Courts recognize that the opinion of experienced and informed counsel supporting settlement is entitled to considerable weight. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2005). Class counsel is very experienced in class action litigation generally and, in particular, the most experienced firm in the country with respect to class actions alleging ERISA breaches for excessive fees in 401(k) Plans. It is Class Counsel's opinion that the proposed Settlement is fair and reasonable. Doc. 399-1, ¶2.

As discussed more fully in Plaintiffs' Motion for Certification of a Settlement Class and their Memorandum in Support, multiple District Courts have certified Class Counsel as class counsel in other ERISA breach of fiduciary duty cases alleging excessive fees. The fifth factor supports the Court's granting final approval of the Settlement Agreement.

    5.   <u>The stage of the proceedings and the amount of discovery completed at the time of settlement</u>

Plaintiffs conducted substantial discovery. Defendants produced to Plaintiffs' Counsel approximately nearly one million pages of documents. Each document was electronically indexed and sorted, and thereafter individually examined, analyzed and cataloged by an attorney. Plaintiffs' Counsel also painstakingly reviewed and analyzed additional and voluminous documents provided by Named Plaintiffs and other documents obtained from public filings with the Department of Labor and third parties. They also had experts intimately familiar with financial services

industry practices, retirement industry practices, stable-value investments, as well as industry fiduciary practices examine and analyze these and other documents and provide opinions based on the record and their experience. This discovery documented the practices described above, the participants' disclosures that were made, the history of the Plan and the recordkeeping, administrative and investment management fees charged to the Plan. Thus, Plaintiffs' Counsel extensively developed the facts supporting their claims, in tremendous detail.

## IV. CONCLUSION

Plaintiffs respectfully request that the Court finally approve the proposed Settlement Agreement as fair, reasonable, and adequate, and enter the proposed Final Order and Judgment.

Dated: October 1, 2013

Respectfully submitted:

/s/ Jerome J. Schlichter
Jerome J. Schlichter  2488116
Troy Doles, 6242803
Heather Lea, 6276614
Mark G. Boyko, 6288036
Kurt C. Struckhoff, 6302037
SCHLICHTER, BOGARD & DENTON
120 W. Main Street, Ste 208
Belleville, IL  62220
and
100 S. Fourth Street, Ste 900
St. Louis, MO 63102
Tel:   314-621-6115
Fax:   314-621-7151 (Fax)

Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2013, I electronically file this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties:

/s/ Jerome J. Schlichter